EMILY C. BOURNE AND FRANCIS C. BOURNE, ADMINISTRATORS OF THE ESTATE OF LOUIS M. BOURNE, DECEASED, v. BOARD OF FINANCIAL CONTROL FOR BUNCOMBE COUNTY, AND THE COUNTY OF BUNCOMBE.

(Filed 10 October, 1934.)

1. **Municipal Corporations J a—Board of Financial Control of Buncombe County may sue and be sued in its own name.**

   The Board of Financial Control of Buncombe County, created by chapter 253, Public Laws of 1931, is given power to sue and be sued in its own name, and an action may be maintained against it by a person liable to the county on a chose in action held by the Board of Financial Control to compel the board to allow an offset against the chose in action. C. S., 1291.

2. **Set-offs and Counterclaims A a—Scope of counterclaims in general.**

   Our statute relative to counterclaims, C. S., 521, goes beyond the common-law pleading and practice, and under its provisions a defendant in an action on contract may file a counterclaim arising on a contract unrelated to the cause of action sued on when the required mutuality exists, so that two independent disputes between the parties may be settled in one action.

3. **Set-offs and Counterclaims A b—Held: Set-off was properly allowed under facts of this case.**

   Plaintiffs' intestate executed a note to a bank with collateral security. The bank pledged the note with its security to the county to secure county deposits. Upon the bank's insolvency and its inability to pay the county deposit, the county, through its Board of Financial Control, took the security pledged by the bank, including the intestate's note, and sold intestate's note at public auction, and purchased the note at the sale. Some time after the sale plaintiffs tendered past-due bonds of the county owned by intestate's estate in payment of the note, and the Board of Financial Control refused to accept the bonds in payment. It appeared that the county had an outstanding bonded indebtedness amounting to a large per cent of the tax valuation of property within the county, and that the county was in default in a large sum on principal and interest on its bonds. *Held*, judgment in plaintiffs' favor that the Board of Financial Control should accept the county bonds tendered by plaintiffs at their face value in payment of the note, which bonds belonged to the estate and were tendered in payment prior to the institution of the action, is without error. The distinction between taxes owed the county, which may not be offset by tender of past-due bonds of the county, and a debt due the county on a note or contract is pointed out by CLARKSON, J.

APPEAL by defendants from *Finley, J.*, 18 August, 1934. From BUNCOMBE. Affirmed.

This is a controversy without action, C. S., 626 to 628, inclusive. The facts agreed upon are as follows: "(1) That the plaintiffs are the duly qualified and acting administrators of the estate of Louis M. Bourne,

deceased, late of Buncombe County, N. C. (2) That the defendant county of Buncombe is a subdivision of the State of North Carolina. (3) That the defendant Board of Financial Control for Buncombe County is a corporation, duly organized and existing under and by virtue of chapter 253 of the Public-Local Laws of the State of North Carolina for the year 1931, as amended by chapter 189, Public-Local Laws of 1933, and is vested with all the powers and required to perform all the duties prescribed by said statutes which are specially pleaded and asked to be considered in all respects as if the said acts were herein incorporated and set out in this paragraph. (4) That on or about 31 October, 1930, the said Louis M. Bourne, deceased, executed and delivered to the Central Bank and Trust Company of Asheville, N. C., in renewal of a note theretofore given to said Central Bank and Trust Company for money borrowed, his promissory note in words and figures as follows, to wit:

"$18,000.00. Asheville, N. C., October 31, 1930. Ninety days after date, I promise to pay to the Central Bank and Trust Company, or its order, at the office of the said Company, at Asheville, N. C., the sum of Eighteen Thousand and No/100 Dollars, with interest thereon after maturity at the rate of six per cent (6%) per annum, for value received. I herewith deposit with the said Company the following securities and properties, described on back of the note, and agree that the above-named properties and securities, and any other added to or substituted therefor, shall be held as collateral security for the above obligation, and for any other obligation or liability of the undersigned to the Company now existing or which may hereafter be contracted, and due or to become due.

"In case the securities at any time pledged for any of the above liabilities should for any reason become unsatisfactory to the said Company, the undersigned agrees to deposit with the said Trust Company additional securities to the satisfaction of the said Company, and in case of failure to do so, forthwith this note shall become due and payable without demand for payment therefor.

"The said Company is hereby authorized: (a) Upon the failure to give additional security as above agreed upon, or (b) Upon failure to pay the above obligations or liability when due, to sell without notice to the undersigned the above-named securities and properties at public sale for cash, at the front door of the office of said Trust Company, after advertising same for five days in three public places in Buncombe County, and with the proceeds of said sale, pay: (c) All expenses and costs of sale, (d) All or any of the obligations herein secured, (e) The surplus to the undersigned, who agrees to be and remain liable to the holder hereof for any deficiency.

"I agree that the holder thereof may purchase the whole or any part of the said securities or properties at any sale thereof discharged from any right or equity of redemption; and that upon any assignment of this note, said Trust Company may deliver said securities and properties, or any part thereof, to the assignee, who shall thereupon become vested in respect thereto with all the powers and rights herein given to the said Company; and said Company shall be thereafter released and discharged from any further liability in connection therewith. No. F-242155. Due 1/29/31. Louis M. Bourne (Seal). Address: Wachovia Bldg. Tel. No. ........ . ............................. (Seal).'

"(5) That at the time of the execution and delivery of said promissory note, the said Louis M. Bourne, deceased, delivered to said Central Bank and Trust Company, as collateral security for the payment of said promissory note, a note payable to Louis M. Bourne, executed by Grove Park Inn *et al.,* in the principal sum of $25,000.

"(6) That there are the following endorsements on the back of the note executed by Louis M. Bourne, and delivered to the Central Bank and Trust Company, to wit: 'Central Bank and Trust Co., Asheville, N. C., J. E. Reister, Assistant Cashier. 2/17/33. Paid on collateral note $500.00.'

"(7) That the Central Bank and Trust Company of Asheville, N. C., was a banking corporation of said State, and on or about 19 November, 1930, closed its doors on account of insolvency, and since said date has been in process of liquidation under the laws of the State of North Carolina, and is now in the hands of Gurney P. Hood, Commissioner of Banks of said State, and his representatives.

"(8) That after the execution and delivery of the note of Louis M. Bourne, deceased, to the Central Bank and Trust Company, and on the same day said note was executed, said promissory note, together with the collateral attached thereto, was transferred and delivered to the county of Buncombe and its authorized representatives and pledged as security for certain funds of said county deposited with said Central Bank and Trust Company.

"(9) That the Board of Financial Control for Buncombe County was duly organized, as provided in chapter 253, Public-Local Laws, 1931, and is engaged in the performance of the duties prescribed by said statute.

"(10) That upon the organization of said Board of Financial Control for Buncombe County, acting pursuant to and under the authority of said statute, it duly appointed one W. E. Shuford, liquidating agent, and thereupon the said Board of Financial Control received from the county of Buncombe and city of Asheville all the securities, properties, choses in action, rights, claims and demands of every kind held by

said county and city as security for deposits of public funds in various closed banks, including the note of the said Louis M. Bourne, fully described in paragraph 4 hereof, together with the collateral note attached to the same as security, described in paragraph 5 hereof.

"(11) That W. E. Shuford acted in the capacity of liquidating agent for said Board of Financial Control from the date of his appointment until on or about .... day of .. ......., 193..., when W. H. Hipps was duly elected and appointed liquidating agent in the place and stead of the said W. E. Shuford, since which time the said W. H. Hipps has been the duly elected, qualified and acting liquidating agent of said Board of Financial Control.

"(12) That owing to the insolvency of said Central Bank and Trust Company, of Asheville, N. C., neither the said banking institution nor the liquidating agent in charge thereof was able to redeem the note of Louis M. Bourne, pledged to said county to secure deposits, as aforesaid, nor to repay to the county of Buncombe or the Board of Financial Control the deposit of public funds for which said note was given to secure, which amount was approximately four million dollars, and on or about 30 October, 1933, W. E. Shuford, liquidating agent for the Board of Financial Control, acting under the authority from said board, and after due notice given as provided by law, sold at public sale, as provided in a collateral agreement and as provided by law, the said note of the said Louis M. Bourne hereinbefore described, and at said sale the said note was knocked off to W. E. Shuford, liquidating agent for the Board of Financial Control, upon his bid of $15,000, and a credit of said amount was duly entered upon the obligations of the Central Bank and Trust Company to the county of Buncombe and the Board of Financial Control, against the amount due for deposit of public funds of Buncombe County in said Central Bank and Trust Company, for which said note was held as security, and the said Board of Financial Control now owns and holds said note, as purchaser at said sale, the payment of which is secured by the collateral mentioned in paragraph 5 hereof.

"(13) That there is now due and owing on said note the principal sum of $17,500, with interest thereon from 29 January, 1931.

"(14) That on or about 9 April, 1934, the estate of the said Louis M. Bourne, deceased, being the owner and holder of certain past-due bonds with coupons attached, issued by said county of Buncombe, which said bonds were acquired by Louis M. Bourne, deceased, some time after the execution and delivery of the aforesaid note, and after said bonds became due and payable, all of which were and are valid and legal obligations of said county tendered and offered to said county of Buncombe, and the Board of Financial Control, said past-due bonds with coupons attached and cost in an amount equal to the principal and interest due on said

note of Louis M. Bourne, deceased, to wit, $20,915.09, in full settlement and discharge of said note and interest.

"(15) That said county of Buncombe and said Board of Financial Control for Buncombe County declined and refused to accept said bonds, coupons and cash in settlement and discharge of said note.

"(16) That the plaintiffs have at all times since the tender aforesaid been able, ready and willing to make good said tender, and herewith tender said bonds, coupons and cash to defendants, and plaintiffs will at all times hold themselves in readiness to deliver the same to the defendants upon the delivery to them of said note of Louis M. Bourne and the collateral thereto attached.

"(17) That the value of all real and personal property within the county of Buncombe, as valued for purposes of taxation for the current year, amounts to $79,889,458. That the county of Buncombe is indebted as follows:

| | |
|---|---:|
| Outstanding Bonds, General | $14,715,000.00 |
| Outstanding Bonds, Special W. & S. | 3,882,400.00 |
| Outstanding Bonds, School | 2,186,000.00 |
| Outstanding Notes, General | 2,815,000.00 |
| Outstanding Notes, School | 810,706.91 |
| Outstanding Int., General | 1,436,291.17 |
| Outstanding Int., W. & S. | 428,085.00 |
| | $26,273,483.08 |

"That said county is in default in the payment of said indebtedness, as follows:

| | |
|---|---:|
| Bonds, General | $1,147,000.00 |
| Bonds, Special W. & S. | 181,100.00 |
| Bonds, School | 199,000.00 |
| Notes, School | 200,000.00 |
| Int., General | 1,436,291.17 |
| Int., Special W. & S. | 428,085.00 |
| | $3,591,476.17 |

"That on 9 April, 1934, the county of Buncombe did not have, nor has it at any time since said date had sufficient funds on hand, other assets available for the payment of debts and such assets as might be converted for the purpose with which to pay its outstanding indebtedness, nor even its debts past due and then owing, nor has said county now sufficient funds and assets with which to meet its financial obligations as they become due and payable.

"(18) It is further stipulated and agreed that if, upon the foregoing facts, the court shall be of opinion that the plaintiffs are entitled to offset against the indebtedness evidenced by the said promissory note of Louis M. Bourne, deceased, past-due bonds of the county of Buncombe, with interest coupons thereto attached, judgment shall be entered to that effect in favor of the plaintiffs. Otherwise, judgment shall be entered that they are not so entitled to offset said indebtedness with such bonds and interest coupons. This 17 August, 1934. Emily C. Bourne, Francis C. Bourne, administrators Louis M. Bourne, deceased. County of Buncombe, By: H. C. Reagan, Chairman Board of Commissioners. Board of Financial Control for Buncombe County. By: Tench C. Coxe, Jr., Chairman."

The judgment of the court below is as follows: "The above entitled cause coming on to be heard before his Honor, T. B. Finley, judge of the Superior Court, holding, according to law, a Superior Court in and for Buncombe County, North Carolina, upon an agreed statement of facts, and being heard, the court finds the following facts: (1) That on or about 31 October, 1930, Louis M. Bourne, a resident of Buncombe County, N. C., executed and delivered to the Central Bank and Trust Company his promissory note, whereby he promised to pay said bank the sum of $18,000, with interest thereon after maturity, ninety days after date.

"(2) That as collateral security for the payment of said note, the said Louis M. Bourne delivered to said Central Bank and Trust Company a promissory note, payable to Louis M. Bourne, and executed by Grove Park Inn et al., in the principal sum of $25,000.

"(3) That on or about 17 February, 1933, there was paid on the note executed by Louis M. Bourne aforesaid the sum of $500.00 on account of principal.

"(4) That immediately upon the execution and delivery of said note, as aforesaid, the Central Bank and Trust Company transferred and delivered the same, together with the collateral attached thereto, to the county of Buncombe, and pledged the same as security for certain funds of said county on deposit with said Central Bank and Trust Company.

"(5) That under and by virtue of the provisions of chapter 253 of the Public-Local Laws of 1931, the county of Buncombe has transferred and delivered said note of Louis M. Bourne, with collateral attached thereto, to the Board of Financial Control for Buncombe County, for the purposes as provided in said statute.

"(6) That owing to the insolvency of the Central Bank and Trust Company, neither said banking institution nor the liquidating agent in charge thereof were able to redeem the note of Louis M. Bourne, nor repay to the county of Buncombe the deposit of public funds for which

said note was given as security, and on or about 30 October, 1933, the Board of Financial Control for Buncombe County purchased the note of Louis M. Bourne aforesaid at a public sale thereof, conducted in accordance with the terms by which said note was pledged to the county of Buncombe, and the said Board of Financial Control now holds said note, with the collateral thereto attached.

"(7) That on or about 9 April, 1934, there was due on said note, principal and interest, the sum of $20,915.09, and on said date the estate of the said Louis M. Bourne, deceased, was the owner of past-due bonds of the county of Buncombe in the principal sum of $20,000, with $895.00 accrued interest, represented by coupons attached to said bonds, and the plaintiffs tendered to the county of Buncombe and the Board of Financial Control said bonds, together with the sum of $20.09 in currency, in payment of the note of Louis M. Bourne aforesaid, with interest thereon.

"(8) That said county of Buncombe and Board of Financial Control for Buncombe County declined to accept said bonds, coupons and cash in settlement and discharge of said note.

"(9) That the plaintiffs have been, at all times since said tender, and now are ready, willing, and able to make good the same by the delivery of said bonds, coupons, and cash.

"(10) That the valuation of all property within the county of Buncombe for purposes of taxation is $79,889,458; that the outstanding indebtedness of the said county of Buncombe is $26,273,483.08, of which said county of Buncombe is in default in the payment of the sum of $3,591,476.17, and said county of Buncombe does not have sufficient funds and assets with which to meet its financial obligations, as they become due and payable.

"From the foregoing facts, the court is of the opinion that the plaintiffs are entitled to use the past-due bonds of the county of Buncombe, with accrued interest coupons thereto attached, in settlement of the note of Louis M. Bourne, deceased, to the extent of the face value of said bonds and coupons.

"It is therefore ordered and adjudged that upon the presentation of said past-due bonds of the county of Buncombe, with accrued interest coupons thereto attached, and cash in the sum of $20.09, to the county of Buncombe, or the Board of Financial Control for Buncombe County, that said county or board accept the same and deliver up to the plaintiffs the said note of Louis M. Bourne, deceased, with the collateral thereto attached. This 18 August, 1934. T. B. Finley, Judge Superior Court."

The only exception and assignment of error made by defendants was to the judgment as signed.

*Bourne, Parker, Bernard & DuBose for plaintiffs.*
*Zeb F. Curtis for defendant.*

CLARKSON, J.   The question presented: Can the plaintiffs use past-due bonds of the county of Buncombe, owned at the commencement of the action, belonging to the estate of decedent, as a counterclaim against a promissory note executed by plaintiffs' intestate and belonging to said county, or Board of Financial Control for Buncombe County? We think so, under the facts and circumstances of this case.

The defendant Board of Financial Control for Buncombe County is created a corporation and, among other powers, is given the power "to sue and be sued" (sec. 1, ch. 253, Public-Local Laws 1931), and "to institute and maintain actions and proceedings of every kind and nature permitted by law to be brought and maintained in any court of competent jurisdiction brought for the purpose of aiding in the liquidation of any of such property, securities, choses in action, claims and demands, and in any and all such actions to resort to any supplemental proceedings permitted by law." (Sec. 36, ch. 253, Public-Local Laws 1931.) A county is authorized: (1) To sue and be sued in the name of the county. C. S., 1291. For the purpose of liquidating the securities held by the county of Buncombe, which the county acquired by reason of the insolvency of the Central Bank and Trust Company, the Board of Financial Control for Buncombe County is nothing more nor less than a liquidating agent designated by law for that purpose. These securities, property, choses in action, rights, claims and demands delivered by the county of Buncombe to the Board of Financial Control for Buncombe County, remain the property of the county of Buncombe, under the express provisions of chapter 253, Public-Local Laws 1931: "All moneys collected by the Board of Financial Control in the liquidation of securities under the provisions of this act, shall . . . on the business day following the day on which such money is collected be deposited in a depositary designated by the Board of Financial Control. All amounts so deposited shall be secured in the manner now or hereafter required by law for securing deposits of public funds in such depositaries. The funds secured on the liquidation of property, securities, choses in action, claims and demands received from the county of Buncombe and the funds received on liquidation of such property, securities, choses in action, claims and demands received from the city of Asheville, shall be deposited in separate accounts and thereafter kept separately." Section 39, chapter 253, Public-Local Laws 1931. After the payment of expenses of liquidation, such funds are to be used for the benefit of the county of Buncombe or the city of Asheville, as set forth in section 40, chapter 253, Public-Local Laws 1931.

N. C. Code, 1931 (Michie), sec. 519, is as follows: "The answer of the defendant must contain—(1) A general or specific denial of each material allegation of the complaint controverted by the defendant, or of any knowledge or information thereof sufficient to form a belief. (2) A statement of any new matter constituting a defense or counterclaim, in ordinary and concise language, without repetition."

Section 521 is as follows: "Counterclaim—The counterclaim mentioned in this article must be one existing in favor of a defendant and against a plaintiff between whom a several judgment might be had in the action, and arising out of one of the following causes of action: (1) A cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action. (2) In an action arising on contract, any other cause of action arising also on contract, and existing at the commencement of the action."

The above statute goes beyond the common-law system of pleading and practice and gives the power to settle two independent disputes between the same parties in the action.

McIntosh, in North Carolina Practice and Procedure in Civil Cases, part of sec. 463, pp. 491 and 492, says: "The statute authorizes the defendant to plead by way of denial, or new matter constituting a defense in confession and avoidance, or new matter constituting a counterclaim. The counterclaim is a creature of the Code; it did not exist at common law, except in the limited sense of set-off or recoupment, and it was recognized in equity in the cross-bill, by which the defendant might demand affirmative equitable relief. The Court says: 'Our statute on counterclaim is very broad in its scope and terms, is designed to enable parties litigant to settle well-nigh any and every phase of a given controversy in one and the same action, and should be liberally construed by the Court in furtherance of this most desirable and beneficial purpose.' It is said to be 'broader in meaning than set-off, recoupment, or cross-action, and includes them all, and secures to defendant the full relief which a separate action at law, or a bill in chancery, or a cross-bill would have secured to him on the same state of facts.' It includes set-off and recoupment, but is different from them, and it is broader than the cross-bill, since it includes both legal and equitable claims. It is a cross-action by the defendant against the plaintiff; sufficient facts should be stated to constitute a cause of action, and they should be stated with the same degree of clearness and certainty as in a complaint, and show the relief to which the defendant considers himself entitled."

Part of section 466, at p. 496: "If the plaintiff sues the defendant upon a contract, the defendant may set up as a counterclaim any other

cause of action arising out of contract, and existing at the commence-ment of the action. This does not arise out of the contract or trans-action set forth in the complaint, but is an independent cause of action which the defendant might assert against the plaintiff."

The value of all real and personal property within the county of Buncombe as valued for purposes of taxation for the current year amounts to $79,889,458. The county of Buncombe is indebted to the amount of $26,273,483.08. It is in default to the amount of $3,591,476.17. Plaintiffs' intestate owed the county (which it acquired from the Central Bank and Trust Company) a note of $17,500, with interest from 29 January, 1931, totalling, on 9 April, 1934, $20,915.09. The county of Buncombe, at the commencement of this action, owed the estate of plaintiffs' intestate past-due bonds, with the coupons attached, legal obligations of the county, $20,895.

The court rendered judgment as follows: "It is therefore ordered and adjudged that upon the presentation of said past-due bonds of the county of Buncombe, with accrued interest coupons thereto attached, and cash in the sum of $20.09, to the county of Buncombe or the Board of Financial Control for Buncombe County, that said county or board accept the same and deliver up to the plaintiffs the said note of Louis M. Bourne, deceased, with the collateral thereto attached."

We can see no error in this judgment. The question of what the bonds of the county of Buncombe were selling on the market is not mate-rial to this controversy. The plaintiffs' intestate owed the county and the county owed the estate of plaintiffs' intestate. We think that "honors are easy" and justice prevails.

This principle here declared does not apply to taxes. A tax is levied by the sovereign in support of the Government. It is not founded on contract or a debt in the ordinary sense, therefore the tax levied by a municipal corporation cannot be allowed as a set-off or counterclaim. *Gatling v. Commissioners of Carteret,* 92 N. C., 536; *Piscataway v. First National Bank,* 90 A. L. R., 423.

For discussion of different aspects of matters of this kind growing out of insolvent banks, see *In re Bank,* 204 N. C., 472; *In re Bank,* 205 N. C., 333; *Lumberton v. Hood, Commissioner,* 204 N. C., 171; *Edgerton v. Hood, Commissioner of Banks,* 205 N. C., 816.

For the reasons given, the judgment in the court below is
Affirmed.