WILLIAM RABB v. A. M. COVINGTON AND ARTHUR D. COVINGTON, TRADING AS COVINGTON BROTHERS, AND THE WHITE PROVISION COMPANY, A CORPORATION.

(Filed 10 May, 1939.)

1. **Food § 8—Implied warranty that food is fit for human consumption obtains in sale by retailer to consumer, even though food is in sealed container.**

Plaintiff bit into a sausage in a casing sold by defendant retailer and was injured when his teeth were broken by a piece of metal in the sausage. It was conceded that the sausage was thus in a sealed container. *Held:* Defendant retailer may be held liable upon the doctrine of implied warranty that the food sold by him was merchantable and fit for human consumption, this being the common law rule in force in this State, C. S., 970, which is supported by the fact that the retailer, although not having any better opportunity of inspection of the food itself than the consumer, does have experience in buying, acquaintance with the manufacturer, knowledge of the brands and the responsibility of the concerns with which he deals; and by the fact that as between facilitating commerce and the preservation of the public health the latter must prevail; and since drastic changes in the common law are ordinarily for the Legislature.

2. **Same—**

The contention that the enforcement of the common law rule of implied warranty in the sale of food by a retailer to a consumer would result in spurious litigation cannot be entertained, since the processes of the courts cannot be denied to those having meritorious causes of action because others might abuse such processes.

3. **Same—**

The common law rule of implied warranty in the sale of food by a retailer to a consumer, even though the food may be sold in a sealed container, has not been rendered obsolete by the changes in the manner and method of the manufacture, preparation and distribution of food.

APPEAL by plaintiff from *Olive, Special Judge,* at February Term, 1939, of MECKLENBURG. Reversed.

This is an action to recover damages for an injury which the plaintiff alleges he sustained by reason of a foreign substance contained in food sold by the defendants for his consumption. The complaint is based both upon negligence and warranty; but upon the trial of the case it appeared that the plaintiff thought himself unable to successfully proceed against the White Provision Company, the manufacturers, upon the ground of negligence, and nonsuit as to that defendant was not resisted.

The evidence discloses that the plaintiff bought from the defendants, through his mother, some "wieners," or sausages, for his lunch. The

mother made the wieners into sandwiches and on the next day plaintiff carried them with him in a lunch box to his work and at lunch time undertook to eat them. He bit into one of the sandwiches, felt his teeth break, and felt pain. He put the food out in his hand, examined it, and found a piece of metal sticking in the meat. The metal had broken the teeth and plaintiff spit out little parts of them. Plaintiff carried the sandwiches home and showed them and the metal which he had found to his mother. He then went to a dentist, Dr. Watkins, who told him that two of his teeth were broken. He later took the sandwiches to Mr. Burwell's office and there found another piece of metal a little larger than the first piece. The pieces of metal were exhibited to the jury.

Dr. Watkins testified that the plaintiff came to him and, upon examination, he found two of his teeth badly broken.

A fellow workman corroborated the statement of the plaintiff that he had seen him when he bit into the sandwich and saw the metal.

It is conceded by the plaintiff that the sausage in question was in a casing and that this constituted a sealed container.

On the conclusion of the evidence the defendants moved for judgment as of nonsuit, which motion was allowed, and plaintiff excepted and appealed.

*C. L. Burwell, E. Riggs McConnell, and John James, Jr., for plaintiff, appellant.*
*John H. Small, Jr., and Jake F. Newell for defendants, appellees.*

SEAWELL, J. The question presented for our decision is whether a sale of food by a retail dealer to a customer for his immediate consumption carries with it a warranty that the food is merchantable and fit for human consumption when the article of food is contained in a sealed package, affording no opportunity for inspection of its contents, and was bought in that condition by the retailer from a manufacturer. The plaintiff contends that there is such a warranty and that it is not abated or disturbed by the fact that the food was at the time of its purchase by defendants and its sale to plaintiff in a sealed container. The defendants contend that inasmuch as the food was sold in such sealed container and neither the seller nor buyer had an opportunity to inspect it, or that at least their opportunities were equal, the doctrine of *caveat emptor* applies and no warranty is implied.

To accept the view urged by the defendants would be to make an exception to the prevailing rule, in favor of canned goods or food sold in sealed packages, in deference to what is termed modern commercial developments in food distribution, which, it is contended, would make the application of the warranty rule inconvenient and unfair to dealers.

RABB *v.* COVINGTON.

No case demanding a decision of this point seems to have been presented to the Court and it has not, therefore, at least not consciously, made such a distinction.

Authorities are divided on the subject, seeming to fall on one side or the other of the line accordingly as they appraise the relative importance of the policies involved, or the consequences which might follow the adoption of one or the other.

Modern conditions of living, the conveniences and necessities of civilization, which have caused infinite division of labor in the production, processing and distribution of food products, whereby in its preparation for final consumption it passes through many hands and assumes many forms, may have rendered many of the old simple rules of law relating to the subject difficult of application and productive of hardship. Conceding that the development and interpretation of law must, as far as possible, be kept in accord with these changing conditions of society to which they apply, we may observe that drastic changes for the purpose of readjustment are usually matters for the lawmaking body and not for the Court. Here we have no sales law applicable to the situation, although the inadequacy of common law rules to do justice in the matter, if such exists, should have been long apparent to the lawmaking bodies. In this case, too, we are confronted with the argument that if we were free to make a choice of policies that choice must be made between facilitation of commerce and the preservation of the public health. In such a choice it seems to us there is no question that the latter should prevail.

The genesis of an implied warranty, it is true, rests in a recognition of the difference in attitude between the seller and purchaser regarding the subject of sale, but this does not necessarily mean that their opportunities are limited to what may be seen or investigated at the time of the sale. One who purchases an article of food for consumption is usually not equal in opportunity with the person who sells it, since the latter has the first opportunity of being assured that the goods he sells are merchantable and fit for human consumption, because of his experience in buying, his acquaintance with the manufacturer, and his knowledge of the brands, and of the responsibility of the concerns with which he deals. If occasionally the reliance which he places on these proves to be unjustified by the result, or if occasionally, through the negligence of the manufacturer, deleterious substances may be introduced into sealed packages, this seems to us rather to be a misfortune, the consequences of which are better absorbed in the course of commerce than passed on to a purchaser, in detriment to the public health.

It cannot be conceded that the present methods of preparation and distribution of food products are so greatly different from that which

has obtained for a long period of time as to destroy the reasons upon which the common law rule has been based. To some extent, they have existed from a remote period sufficiently, at least, to have had any influence to which they are entitled in the establishment and maintenance of the principles upon which the rule is founded, and the magnitude which the system has now reached does not, we think, afford a sufficient reason for its abolition.

The importance of the opportunity for immediate inspection is more apparent than real, since certain kinds of goods sold in bulk may not be inspected conveniently or sufficiently to disclose their unwholesomeness or content of deleterious or foreign matter.

In coming to this decision we not only recognize the superior opportunity of the retailer over that of the consumer to be assured of the quality of the products sold by him through his opportunity of selection of brands and purchase from reliable manufacturers, but also recognize the fact that the internal pressure of commerce in this field, as well as in others, will, through the necessity of meeting competition, of improving methods, and of rigid attention to matters relating to the quality and fitness of the product, strongly tend to minimize untoward happenings of the kind complained of in this suit, unless that pressure is removed by a rule which would compel the consuming public to absorb, without redress, consequences for which trade should be left responsible.

Under *Thomason v. Ballard and Ballard Co.,* 208 N. C., 1, 179 S. E., 30, there is no redress to be had by the consumer against the manufacturer under the doctrine of implied warranty, but only because of negligence. Since, as we have stated, the effect of modern methods of distribution has been to place the manufacturer at a remote distance from the consumer, and as he is ordinarily unable to prove the negligence of a manufacturer, since the doctrine of *res ipsa loquitur* is denied to him, the effect of the adoption of the views urged by the defendants would practically destroy any remedy which a consumer might have for the sale to him of food dangerous and unfit for human consumption, and prove a serious menace to the public health. *Griffin v. James Butler Grocery Co.* (1931), 108 N. J. Law, 92, 156 A., 636, 638; *Los Angeles Olive Growers' Assn. v. Pacific Grocery Co.* (1922), 119 Wash., 293, 205 P., 375; *Chapman v. Roggenkamp* (1913), 182 Ill. App., 117.

The fact, if it is a fact, so insistently urged by defendants' counsel that a ruling of this sort would open the gate to a fertile field of spurious litigation does not appeal to us. That some might abuse the processes of the court affords no reason for denying them to others who have meritorious causes of action.

We think the course we have pursued in this case has abundant support in reasoned authority.

In *Swift & Co. v. Aydlett,* 192 N. C., 330, at pages 334, 335, the principle is tersely stated: "The harshness of the common law rule of *caveat emptor,* when strictly applied, makes it inconsistent with the principles upon which modern trade and commerce are conducted; the doctrine of implied warranty is more in accord with the principle that 'honesty is the best policy,' and that both vendor and vendee, by fair exchange of values, profit by a sale."

As peculiarly applicable to this case, we quote from *Colonna v. Rosedale Dairy Co.* (Va., 1936), 186 S. E., 94, 97: "We hold that the doctrine of implied warranty must be applied, and for these reasons: It is a rule of the common law, and that law is ours by inheritance; it is a salutary rule, and tends to promote the health of all the people. Pecuniarily the vendor may suffer, but at times the vendee's life itself is at stake, and generally the vendor has opportunities for information as to the wholesomeness of his foodstuff which the vendee cannot have. In business for profit he must bear this burden which the law puts upon him."

From Williston on Sales (2nd Ed.), sec. 242, applicable to the argument rejecting implied warranty in cases of this kind, we quote: "The same argument, however, may be made in regard to any implied warranty, not only of food but of other articles where the seller could not discover the defect. Accordingly, if canned goods are to be made an exception to the general rule governing sales of food, the whole law of implied warranty should be revised and placed on the basis of negligence. But the general principle of the common law is opposed to this, and certainly if a dealer is ever to be made liable for injuries caused by defective goods where he has been guilty of no fault, the reasons are stronger for holding him liable for selling defective foods than in any other kinds of sale. According to the weight of authority, presumably for these reasons, a dealer is liable for selling such food even though in cans of reputable brand."

In this State the common law is in force by virtue of the statute— C. S., 970. While no person has a property or vested interest in any rule of the common law—*Hurtado v. California,* 110 U. S., 516, 532, 28 L. Ed., 232—we do not consider that the changed conditions pointed out in defendants' brief have rendered it obsolete and the matter under consideration is one for the Legislature. If the choice has become ours, then, upon reason and authority, we accept its rule as being commendably applicable to the present case.

The judgment of the court below is

Reversed.