PERFECTING SERVICE COMPANY, A CORPORATION v. PRODUCT DEVELOPMENT AND SALES CO., A CORPORATION, AND RADIATOR SPECIALTY COMPANY, A CORPORATION.

(Filed 29 April, 1964.)

**1. Sales § 8—**

A warranty, express or implied, is contractual and extends ordinarily only to the parties to the contract of sale.

**2. Same; Sales § 14; Pleadings § 8— In an action by the original seller, the subpurchaser may not maintain counterclaim against purchaser for breach of warranty.**

In an action by the original seller against the purchaser and subpurchaser who guaranteed payment by the purchaser, it *is held* the subpurchaser is not entitled to maintain a counterclaim against the seller for breach of the original seller's warranties, the subpurchaser not being a party thereto, nor is the subpurchaser entitled to maintain in the original seller's action a counterclaim against the purchaser for breach of the purchaser's warranties to the subpurchaser, since only matters relevant to the original seller's action in which all three of the parties have a community of interest may be litigated. The holding that the consumer may maintain an action against the manufacturer is an exception to the rule of privity which applies only to sales of articles for human consumption sold in sealed packages prepared by the manufacturer.

**3. Engineering § 2—**

Engineering is a profession, and when an engineer undertakes to design and fabricate a mechanical model of a piece of machinery, the engineer implies that he possesses that degree of professional learning, skill and ability which others of that profession ordinarily possess, and that he will exercise reasonable care in the use of such skill and will exercise his best judgment in his performance of the undertaking, and he may incur liability in tort for negligent performance or in contract for breach of express warranty of quality.

**4. Sales § 14a; Pleadings § 8—**

In an action by the seller against the purchaser and the guarantor of payment, the guarantor is entitled to set up a counterclaim against the seller for the amount the guarantor paid the seller under a separate contract for engineering, designing, and fabricating a mechanical model upon allegations that the model was totally worthless for the purpose for which constructed, since both causes arise out of contract. G.S. 1-137(2).

**5. Sales § 14a—**

Where the article purchased is worthless for the purpose for which it was bought and sold, the purchaser, in the seller's action *ex contractu*, may maintain a counterclaim against the seller upon the theory of failure of consideration.

**6. Pleadings §§ 2, 19—**

Where one defendant attempts to allege a cross-action against his co-defendant and also a counterclaim against the plaintiff, but does not distinguish between the allegations relating to the cross-action and the allegations relating to the counterclaim, demurrer to the counterclaim must be sustained, even though the counterclaim, if properly alleged, is maintainable. G.S. 1-127.

**7. Pleadings § 34—**

Allegations which are evidentiary or redundant or which relate to a cause of action which the pleader is not entitled to set up in the action, are properly stricken on motion.

APPEAL by defendants from *Walker, S.J.*, January 6, 1964, "D" Non-Jury Civil Session of MECKLENBURG.

*Pierce, Wardlow, Knox and Caudle, and Stuart R. Childs for plaintiff.*

*Weinstein, Waggoner and Sturges, and T. LaFontine Odom for defendants.*

MOORE, J. This is an action to recover damages for an alleged breach of a contract for the manufacture, sale and delivery of merchandise.

A former appeal in this cause was heard by us at the Spring Term 1963. *Service Co. v. Sales Co.*, 259 N.C. 400, 131 S.E. 2d 9. A new trial was ordered. The Court's opinion on that appeal sets out a comprehensive summary of the pleadings as they were then cast. Thereafter, on 14 November 1963, the superior court entered an order permitting defendants to amend their answers. The answers were amended so as to change somewhat the bases and nature of defendants' affirmative defenses. The questions posed by the present appeal relate only to the pleadings. It is therefore necessary that we summarize the pleadings as they now are.

The complaint alleges in substance: Defendant, Radiator Specialty Company (hereinafter Radiator), obtained license to manufacture and sell a patented device, a free-wheeling fan unit for automobiles, later called "Fan-O-Matic." Radiator conferred with plaintiff in late 1955 and early 1956 and proposed that plaintiff manufacture the parts for

Fan-O-Matic. Drawings of the inventor's model were presented to plaintiff, and at Radiator's request plaintiff made drawings and designs and fabricated a model unit, for which service Radiator paid plaintiff $1700. Revisions in the design were made and Radiator authorized plaintiff, by purchase order dated 13 June 1956, to procure dies and molds for the manufacture of Fan-O-Matic parts, for which tools Radiator agreed to pay $8750. At the same time, by another purchase order, plaintiff was directed to manufacture and deliver parts for 10,-000 units, Radiator to pay $6.86 per unit therefor. Thereafter, defendant Product Development and Sales Company (Product Development) was organized and incorporated, and with the consent of plaintiff assumed all liabilities of Radiator under the purchase orders of 13 June 1956. Radiator guaranteed to plaintiff in writing the payment of the obligations assumed by Product Development. On 4 February 1957 Product Development paid plaintiff $8750 pursuant to the purchase order for dies and molds. Plaintiff purchased materials and manufactured 300 units and delivered them for testing and approval. Plaintiff was then requested to proceed with dispatch in manufacturing and delivering the remaining 9700 units. After a considerable number had been manufactured and delivered, Product Development, in breach of its contract, directed plaintiff to cease manufacturing operations, asked that the contract be rescinded, refused to accept further deliveries, and declined to make any further payments on account. Plaintiff is entitled to $58,126.61 damages from Product Development for breach of the purchase order, and Radiator is liable therefor under its guaranty.

Radiator and Product Development, in separate answers, deny that they are obligated to plaintiff in any amount, and allege in almost identical language facts, in substance except where set out verbatim, as follows (paragraphing and numbering ours):

(1). Radiator acquired license for the manufacture and sale of Fan-O-Matic, exhibited a model thereof to plaintiff, and plaintiff agreed to engineer and design "a new and improved model" and construct a sample unit. On 10 April 1956 Radiator submitted to plaintiff purchase order No. 14888, agreeing to pay plaintiff $1700 for

"Necessary services and materials to engineer and design our 'Fan-O-Matic' unit. Drawing for dimensions furnished by you. Necessary dimensions furnished by us. Drawing and sample of the finished unit to be furnished by you and will be our property. Quotation on production unit. In quantities of 5,000 and 1,000 over 1 year period to be furnished with drawing and sample."

(2). In submitting the foregoing purchase order Radiator "completely relied on the skill and judgment of plaintiff in engineering and

designing the new Fan-O-Matic unit; plaintiff knew this; Radiator had advised plaintiff that it would sell the units to jobbers and dealers for resale to car owners; and Radiator paid plaintiff $1700 for the engineering and designing service and the making of the sample model.

(3). Later, plaintiff advised that, in preparation for manufacture of the units, tools, dies and molds would have to be acquired at a cost of $8750, and on 13 June 1956 Radiator delivered to plaintiff purchase order No. 15067, as follows:

"Necessary services and materials for the making of tools covering various dies and molds for the manufacture of our Fan-O-Matic Unit.

$8,750.00

The above due and payable immediately upon approval by us of sample units made from the dies and molds."

(4). On 13 June 1956 Radiator also delivered to plaintiff purchase order No. 15068 (accepted and approved by plaintiff) whereby Radiator ordered 10,000 units at the price of $6.86 per unit. The order contained the following provisions:

"10M Fan-O-Matic Units, completely assembled, ready for shipment, packed bulk. Units to be made in accordance with drawing 1222-100-RS with proposed and discussed changes per your letter June 8, 1956. Drive plate aluminum metallized, cast iron free-wheeling hub covered with a light coat of blue rust-preventive paint.

Deliveries as follows:

300 on or before Sep. 10, 1956.
2M per month thereafter.

Perfecting Service Co. guarantees that the Fan-O-Matic Unit will be manufactured in accordance with the approved design, and will be functioning correctly in accordance with the data supplied by Radiator Specialty Company. . . .

All material and workmanship shall be guaranteed for a period of 18 months after shipment of first production lot."

(5). Radiator proceeded to advertise Fan-O-Matic nationally, and printed circulars for distribution by its salesmen and outlets. In due time Radiator received 4000 orders and others were coming in.

(6). Product Development was chartered for the purpose of purchasing the units from plaintiff. With the consent of plaintiff, Radia-

tor "cancelled its purchase orders, Nos. 15067 and 15068, . . . and . . . Product Development . . . issued its purchase orders numbered 101 and 102, both dated November 30, 1956." Radiator thereafter guaranteed the Credit of Product Development. It was "with the understanding of all parties concerned" that Product Development would purchase the units from plaintiff and sell and deliver them to Radiator for resale to the trade. Product Development agreed to sell the units to Radiator at the price of $8.58 per unit, and plaintiff knew this; Product Development "agreed to sell such units to . . . Radiator . . . with all express and implied warranties theretofore made by plaintiff."

(7). The first deliveries were made after 1 January 1957 and as soon as they were received by the trade complaints began to come in "that the units were flying apart and that the bolt on the center bearing seat was breaking off; the defendants immediately complained to plaintiff." Plaintiff made certain changes and assured defendants the units were in perfect operating order and would cause no more trouble. In reliance upon these assurances, defendants accepted further deliveries.

(8). On 1 February 1957 Product Development paid plaintiff $8750 on account of purchase order No. 102 (for tools, dies and molds), and in the letter of transmittal of payment said, ". . . we want it understood this payment does not constitute an acceptance or approval of the performance of the Fan-O-Matic unit in accordance with your guarantee . . ."

(9). Plaintiff actually delivered 2877 units to Product Development; it delivered 2334 units to Radiator, which in turn shipped them to their customers; "that within due time thereafter, the defendant Radiator Specialty Company began receiving complaints from all over the United States from jobbers, dealers, and customers, to the effect that the Fan-O-Matic unit, upon installation upon various models of automobiles, was flying apart, and that the parts of the Fan-O-Matic were striking fans, motors, radiators, batteries, and causing all kinds of damage to the motor vehicles upon which they were installed; that the defendant Radiator Specialty Company was called upon to pay damages to owners of motor vehicles for damage caused to such motor vehicles by the Fan-O-Matic unit; that because of the mounting complaints and inherent dangers involved, it became necessary for the defendant Radiator Specialty Company to advise all of its jobbers to return all of the Fan-O-Matic units theretofore shipped out; that, accord-

ingly, 2,161 Fan-O-Matic units were returned to the defendant Radiator Specialty Company by the purchasers thereof, many of same being in broken condition resulting from failure to properly operate."

(10). Immediately thereafter Radiator refused to accept any further deliveries from Product Development, and the latter advised plaintiff it would refuse to accept any more units because of defective engineering, designing, materials and workmanship, and demanded that the purchase order be rescinded.

(11). In addition to the express warranties, plaintiff impliedly warranted that the units were fit for the purposes for which they were sold; all warranties were breached. The units were not merchantable "in that they were improperly designed and engineered by plaintiff," and materials and workmanship were defective. Defects could not be detected by inspection and became apparent only in use. The units were worthless and there was a complete failure of consideration.

(12). "That if the said fan units had been properly designed by the plaintiff and properly manufactured by the plaintiff, all in accordance with express warranties and implied warranties as mentioned above, each unit would have had a value to the defendant Product Development and Sales Co. of Six & 86/100 ($6.86) Dollars each; however, the units as received by the defendant Product Development and Sales Co. and as delivered to the defendant Radiator Specialty Company were worthless."

Based on the alleged facts, summarized in the numbered paragraphs above, Radiator pleads a "First Further Answer and Defense" and a cross-action against Product Development and a counterclaim against plaintiff. (1) In the "First Further Answer and Defense" Radiator pleads the "breach of both express and implied warranties . . . in complete bar of any recovery by plaintiff herein." (2) In the cross-action and counterclaim Radiator alleges it has suffered damages in the amount of $53,707.92, it is entitled to recover of Product Development this sum by reason of the express and implied warranties, and it is entitled to recover of plaintiff this sum for breach of the "undertaking and implied warranty of plaintiff that it would design a unit that would function adequately for the intended purpose." The items making up the damages claimed by Radiator are: $31,970 for loss of profits, $965 freight on units returned, $1910.47 for boxes and cartons, $497.03 packing, $633.42 billing and shipping, $13,941 advertising, $2091 damages paid to customers, and $1700 paid plaintiff for drawings.

Based on the same allegations of fact, set out in the numbered paragraphs above, Product Development pleads (1) the "breach of both

express and implied warranties . . . in complete bar of any recovery by plaintiff herein," and (2) that it is entitled to recover of plaintiff, by reason of plaintiff's breach of warranties, damages, including $8074 payments made to plaintiff for Fan-O-Matic units, $6020 for loss of profits, and $9450 paid plaintiff for tools, dies and molds. As a further element of damages, it alleges: "That the defendant Product Development and Sales Co. admits the allegations contained in the cross action and counterclaim of the defendant Radiator Product Development Sales Company. If the defendant Product Development Sales Co. is indebted to the defendant Radiator Specialty Company for all or any part of the Fifty-three Thousand Seven Hundred Seven and 92/100 ($53,707.92) Dollars alleged in the cross action and counterclaim of Radiator Specialty Company, then the defendant Product Development and Sales Co. is entitled to recover same amount from the plaintiff Perfecting Service Company."

Plaintiff demurred to and moved to strike Radiator's cross-action and counterclaim. It demurred to Radiator's cross-action against Product Development on the ground that if a cause of action exists in behalf of Radiator against Product Development for breach of warranty it cannot be asserted and maintained in the present action, and demurred to Radiator's counterclaim against plaintiff on the ground that the facts alleged do not constitute any basis for relief by way of counterclaim or otherwise. Plaintiff also moved to strike from Radiator's "First Further Answer and Defense" all of paragraph 21 (our paragraph numbered 12 above) and part of paragraph 6 (that part of our paragraph numbered 9 above which is in quotation marks). Plaintiff moved to strike from Product Development's counterclaim all of paragraph 25 (the allegations set out in the last two sentences in the next preceding paragraph of this opinion) and paragraph 3 of the prayer for relief, asking recovery of $53,707.92 from plaintiff.

The court below sustained the demurrer and the motions to strike. Defendants contend that this was error.

Plaintiff's suit against Product Development is to recover for Fan-O-Matic parts manufactured, sold and delivered to the latter under contract, and for refusal of Product Development to accept delivery of a quantity of the parts contracted for. Radiator was made a party defendant because of its agreement to guarantee Product Development's indebtedness to plaintiff. *Milling Co. v. Wallace*, 242 N.C. 686, 89 S.E. 2d 413.

In order to make clear the relationship of the parties to this action, we point out that Radiator in its pleadings takes the position that Product Development is an entirely separate corporate entity from

Radiator, the operations and obligations of the former are independent of those of the latter, Product Development is not a subsidiary of Radiator, the relationship of principal and agent does not exist between them, Radiator guaranteed Product Development's indebtedness to plaintiff, and as between Radiator and Product Development there are only the relationships of buyer and seller and guarantor and principal debtor. Indeed the pleadings of plaintiff and Product Development are to the same effect. Therefore, the questions on this appeal must be considered in the light of these relationships.

Radiator contends (1) its purchase of Fan-O-Matic units from Product Development gave rise to warranties of quality and merchantability which were breached, and it is entitled to maintain a cross-action against Product Development in this cause for breach of the warranties, and (2) it consummated separate dealings with plaintiff, preliminary to plaintiff's contract with Product Development, and these dealings give rise to a counterclaim against plaintiff for breach of warranty. Plaintiff contends to the contrary. These points of controversy are the principal matters for decision.

We first consider the cross-action.

As elements in the contract of sale between plaintiff and Product Development, plaintiff expressly warranted that the Fan-O-Matic units would be manufactured "in accordance with the approved design" and would be functioning correctly "in accordance with the data supplied," and that all materials and workmanship was guaranteed for a period of 18 months after shipment of the first production lot. In the contract of sale between Product Development and Radiator, "Product Development . . . agreed to sell such units to . . . Radiator . . . with all express and implied warranties theretofore made by the plaintiff."

Whether there were any implied warranties in the sale from plaintiff to Product Development is a question which does not arise on this appeal, but may arise upon the trial. Ordinarily there can be no implied warranty of quality in the sale of personal property where there is an express warranty on the subject, and where a party sets up and relies upon a written warranty he is bound by its terms and must comply with them. *Guano Co. v. Live Stock Co.*, 168 N.C. 442, 84 S.E. 774; 46 Am. Jur., § 334, pp. 516-518; 77 C.J.S., Sales, § 316, pp. 1161-1164. But a vendee may recover against the vendor, irrespective of the terms of the warranty, if there is a failure of consideration. If an article is of no value to either party, it cannot be the basis of a sale. *Williams v. Chevrolet Co.*, 209 N.C. 29, 182 S.E. 719. We express no opinion on these matters, but point out that they may be of importance at the trial stage.

A warranty is an element in a contract of sale and, whether express or implied, is contractual in nature. Only a person in privity with the warrantor may recover on the warranty; the warranty extends only to parties to the contract of sale. *Murray v. Aircraft Corporation,* 259 N.C. 638, 131 S.E. 2d 367; *Prince v. Smith,* 254 N.C. 768, 119 S.E. 2d 923; *Wyatt v. Equipment Co.,* 253 N.C. 355, 117 S.E. 2d 21. A manufacturer is not liable to an ultimate consumer or subvendee upon a warranty of quality or merchantability of goods which the ultimate consumer or subvendee has purchased from a retailer or dealer to whom the manufacturer has sold, for there is no contractual relation between the manufacturer and such consumer or subvendee. *Rabb v. Covington,* 215 N.C. 572, 2 S.E. 2d 705; *Thomason v. Ballard & Ballard Co.,* 208 N.C. 1, 179 S.E. 30. There is an exception to this rule where the warranty is addressed to the ultimate consumer, and this exception has been limited to cases involving sales of goods, intended for human consumption, in sealed packages prepared by the manufacturer and having labels with representations to consumers inscribed thereon. *Simpson v. Oil Company,* 217 N.C. 542, 8 S.E. 2d 813.

Where goods are sold with a warranty to a dealer, and the dealer resells them with a similar warranty to a subpurchaser and the subpurchaser recovers damages for breach of warranty from the dealer, the dealer has a *prima facie* right to recover such damages against the seller who originally sold him the goods. *Aldridge Motors, Inc. v. Alexander,* 217 N.C. 750, 9 S.E. 2d 469; *Ashford v. Shrader,* 167 N.C. 45, 83 S.E. 29. "Where goods are sold with a warranty and the vendee resells them with a similar warranty, which is broken, the first purchaser may, in a proper case, recover the amount of his *probable liability* to his vendee, when such damages may be reasonably supposed to have been within the contemplation of the parties at the time the contract was made as the probable result of a breach of warranty, such damages not being too remote" (emphasis added). 77 C.J.S., Sales, § 384, p. 1338.

The contract for the manufacture and sale of Fan-O-Matic units was between plaintiff and Product Development. Radiator is not privy to that contract; it withdrew its purchase orders and requested that the sale be made to Product Development, and plaintiff and Product Development agreed. The warranty incident to that sale runs to Product Development. Therefore, Radiator has no cause of action against plaintiff for breach of that warranty. Radiator bought from Product Development. The question for decision is whether *in this action* by plaintiff against Product Development on the contract of manufacture and sale Radiator, having been made a party because of its guaranty

contract with plaintiff, may maintain a cross-action for affirmative relief against Product Development for breach of the latter's warranty. Radiator, as guarantor, has pleaded plaintiff's alleged breach of warranty as a bar to and set-off against plaintiff's claim, and plaintiff has not challenged this pleading. But plaintiff contends that Radiator may not maintain the cross-action for affirmative relief against Product Development in this suit.

"The obligation arising upon a warranty is that of an undertaking or promise that the goods shall be as represented or, more specifically, a *contract of indemnity* against loss by reason of defects therein." (Italics ours). *Wyatt v. Equipment Co., supra.* A contract of indemnity between defendants concerns only the contracting parties. Plaintiff is not privy thereto. It is not ordinarily germane to plaintiff's cause of action, and the determination of the rights and liabilities of such defendants with respect to their contract of indemnity is not necessary to a conclusion of plaintiff's cause of action. Only matters relevant to the original or primary action in which all three of the parties have a community of interest may be litigated. *Greene v. Laboratories, Inc.,* 254 N.C. 680, 120 S.E. 2d 82; *Gaither Corp. v. Skinner,* 238 N.C. 254, 77 S.E. 2d 659; *Wrenn v. Graham,* 236 N.C. 719, 74 S.E. 2d 232; *Clothing Store v. Ellis Stone & Co.,* 233 N.C. 126, 63 S.E. 2d 118; *Eledge v. Light Co.,* 230 N.C. 584, 55 S.E. 2d 179; *Board of Education v. Deitrick,* 221 N.C. 38, 18 S.E. 2d 704; *Montgomery v. Blades,* 217 N.C. 654, 9 S.E. 2d 397. Strict application of this principle would bar the maintenance of the cross-action. The warranty of Product Development to Radiator is express; Radiator alleges "that Product Development . . . *agreed* to sell such units to . . . Radiator . . ., with all the express and implied warranties theretofore made by the plaintiff."

However, in connection with this question it is necessary that we examine our decision in *Davis v. Radford,* 233 N.C. 283, 63 S.E. 2d 822. Davis bought from Radford Drug Store (Radford) an article for human consumption known as "Westsal," a salt substitute, which, it was alleged, contained poisonous ingredients causing injury and death to Davis. Plaintiff, administrator of Davis' estate, sued Radford for breach of implied warranty. Answering, Radford alleged that he purchased the article from Smith Company (Smith), wholesaler, with the implied warranty from Smith that it was fit for human consumption, and that Smith was primarily liable for any damages plaintiff might recover from Radford. On motion of Radford the court made Smith an additional party defendant. Smith demurred on the ground that there was a misjoinder of parties and causes. The demurrer was overruled and this Court affirmed. The rationale of the opinion of this Court is

that it was a matter of primary and secondary liability — a holding more appropriate in a case sounding in tort rather than contract. The opinion emphasizes that the article was intended for human consumption, was prepared and placed in a sealed package by the original seller, and the package reached the consumer in the identical form in which it was prepared by the original seller. The opinion suggests that the same results might have been reached had plaintiff sued Smith directly under authority of *Simpson v. Oil Company, supra.* In any event the decision constitutes an abandonment of the privity rule for the purposes of that case. 30 N.C.L. Rev., 191-197. But it seems clear from the discussion that it was not intended to abandon the privity rule in all warranty cases, but the procedure approved therein was to apply only to sales of articles for human consumption sold in sealed packages prepared by the manufacturer. This case must be considered an exception to the privity rule.

To permit Radiator to maintain the cross-action in the instant case would effect a more complete abandonment of the privity requirement than the ruling in the *Davis* case. Here Radiator sets up its cross-action against Product Development specifying damages amounting to $53,-707.92. Product Development cooperatively acknowledges its liability to Radiator in this exact amount, and counterclaims against plaintiff therefor. By this procedure Radiator and Product Development seek to go into trial contending that the liability between them is fixed, and Product Development's recoverable damages are $53,707.92 plus any additional damages Product Development may be able to show. If allowed, such procedure would as effectively avoid the privity rule as a direct counterclaim by Radiator against plaintiff. Radiator, by its own choice and management, is not privity to the contract of sale between plaintiff and Product Development. Having made its choice, it must abide by it. We hold that Radiator may not maintain the cross-action in this suit, and it was properly stricken. It follows that the court below was correct in striking all of paragraph 25 of Product Development's counterclaim, and paragraph 3 of its prayer for relief.

This brings us to a consideration of Radiator's counterclaim against plaintiff. Radiator contends, and its pleadings permit the inference, that it had and consummated certain dealings with plaintiff before Product Development relieved Radiator and assumed the obligations and benefits of the contract with plaintiff for the manufacture, sale and delivery of Fan-O-Matic parts. On the other hand plaintiff contends that its activities relate to a single indivisible transaction as far as the manufacture, sale and delivery of products are concerned. However, we ignore here plaintiff's theory of the case since the controversies for determination arise upon the answers and not the complaint.

The factual basis of the counterclaim, stated briefly, is as follows: Radiator exhibited the inventor's model of Fan-O-Matic to the engineers and executives of plaintiff and it was "agreed that plaintiff corporation would engineer and design a new and improved model . . . including construction of a sample unit." Radiator submitted and plaintiff accepted a purchase order by which plaintiff agreed to furnish "necessary services and materials to engineer and design" the unit, plaintiff to furnish drawings for dimensions, Radiator to furnish dimensions, "drawing and sample of the finished unit" to be the property of Radiator, and Radiator to pay $1700 for the services, drawing and sample unit. In submitting the purchase order Radiator "completely relied on the skill and judgment of the plaintiff," and plaintiff knew this. Plaintiff understood the purpose of the instrument. Radiator paid the $1700 promised. Plaintiff made drawings and a sample. Plaintiff's contract with Product Development for manufacture and sale of Fan-O-Matic came later. Because of defects in designing and engineering, the drawing and sample model were worthless and there was a complete failure of consideration, and therefore plaintiff breached its express and implied warranties of quality.

G.S. 1-137 provides that a defendant may set up as a counterclaim (1) "a cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action," and (2) "In an action arising on contract, any other cause of action arising also on contract, and existing at the commencement of the action." The foundation of plaintiff's claim against Radiator is the guaranty contract. Radiator's counterclaim does not arise out of and is not connected with the guaranty contract, nor does it arise out of or have connection with plaintiff's contract with Product Development; the counterclaim is not authorized under (1) above. It arises upon a separate contract and is authorized under (2) above, if a cause of action is stated. *Rubber Co. v. Distributors, Inc.,* 251 N.C. 406, 111 S.E. 2d 614; *Credit Corporation v. Motors,* 243 N.C. 326, 90 S.E. 2d 886; *Bourne v. Board of Financial Control,* 207 N.C. 170, 176 S.E. 306.

By any fair construction of the facts alleged by Radiator, plaintiff contracted to furnish Radiator professional services—engineering, designing and fabricating a mechanical model. The term "professional" is commonly used to distinguish those highly proficient in many endeavors from mere amateurs. *State v. Leeth,* 67 S. 2d 46, 48 (Ala. 1952). The vocation of industrial designing is a profession rather than a trade or business. *Teague v. Graves,* 27 N.Y.S. 2d 762, 765 (1941). Under statutes relating to the licensing of professional engineers, the field of

engineering involves the making of plans and designs and the supervision of construction. *Smith v. American Packing & Provision Co.,* 130 P. 2d 951, 957 (Utah 1942). When one undertakes a professional assignment, the engagement implies that he possesses the degree of professional learning, skill and ability which others of that profession ordinarily possess, he will exercise reasonable care in the use of his skill and application of his knowledge to the assignment undertaken, and will exercise his best judgment in the performance of the undertaking. He is not a warrantor or insurer of results (unless he expressly so contracts). *Hawkins v. McCain,* 239 N.C. 160, 168, 79 S.E. 2d 493. That is, no implied warranties arise by reason of the engagement. He may incur liability in tort by reason of negligent performance. And he must answer for breach of his express contracts.

According to Radiator's answer, plaintiff agreed to engineer, design and fabricate "a new and improved model." It did furnish a design and model and was paid for the services. The answer fails to give any specific information as to whether plaintiff's model was an improvement over the inventor's model, what material plaintiff's model was made of, or the manner and proficiency of its operation. The defects in the Fan-O-Matic units manufactured, sold and delivered to Product Development are listed with particularity, but this is a matter between plaintiff and Product Development. There is no allegation as to whether the model was altered in any respect before units were manufactured, or as to whether the units were manufactured of the same material as plaintiff's original model. There is a general allegation that the design and model were worthless and there was a complete failure of consideration. Assuming the truth of the allegations, as we must do upon demurrer and motion to strike, a counterclaim may be maintained upon the theory of failure of consideration. *Edgerton v. Johnson,* 217 N.C. 314, 7 S.E. 2d 535; *Pool v. Pinehurst, Inc.,* 215 N.C. 667, 2 S.E. 2d 871; *Williams v. Chevrolet Co.,* 209 N.C. 29, 182 S.E. 719; *Swift & Co. v. Aydlett,* 192 N.C. 330, 135 S.E. 141; *Hyman v. Broughton,* 197 N.C. 1, 147 S.E. 434; *Johnston v. Smith,* 86 N.C. 498. The items of special damages—loss of profits, freight, boxes and cartons, packing, billing and shipping, advertising, and damages to customers—cannot be said to have been within the contemplation of the parties in making the contract for professional services. These grew out of the sale transaction between Product Development and Radiator. If, as alleged, the services of plaintiff in engineering, designing and fabricating the model were worthless and there was a failure of consideration, Radiator would be entitled to recover on its counterclaim the $1700 paid for such services.

Radiator has commingled its counterclaim against plaintiff and its cross-action against Product Development, making it difficult to separate the allegations pertaining to each. They are not separately stated. "Demurrer is proper when it appears upon the face of the complaint (pleading) that '. . . several causes of action have been improperly united.' G.S. 1-127. The quoted provision has been considered frequently when demurrer has been interposed on the ground that two or more *separately stated* causes of action have been improperly united in the same complaint. It is equally applicable when a complaint alleges facts sufficient to constitute two or more causes of action but fails to state separately facts sufficient to constitute each cause of action. G.S. 1-123; Rule 20(2), Rules of Practice in the Supreme Court, 221 N.C. 557 (254 N.C. 802) . . ." *Heath v. Kirkman,* 240 N.C. 303, 306, 82 S.E. 2d 104.

Radiator's counterclaim and purported cross-action are not separately stated as required by G.S. 1-138; Rule 20(2), Rules of Practice in the Supreme Court, 254 N.C. 802. Facts are alleged in a series of paragraphs without any satisfactory attempt to distinguish between those relating to the cross-action and those relating to the counterclaim. The demurrer is sustained. The cross-action is not maintainable in any event in this action. But a counterclaim as hereinbefore indicated may be maintained. The court below was correct in striking from Radiator's Third Amended Answer all of Paragraphs 1 to 25, inclusive, of the counterclaim and cross-action, and paragraph 2 of the prayer for relief. Radiator, if so advised, may move to amend its answer so as to set out separately in clear and unambiguous terms the facts upon which it relies for a counterclaim against plaintiff for breach of *express* contract for engineering, designing and fabricating a model.

The court below did not err in striking from Radiator's Third Amended Answer all of paragraph 21 and the challenged portion of paragraph 16 of the First Further Answer and Defense. The matters therein alleged are either evidentiary or redundant. Furthermore, they are not stricken from Product Development's pleadings, and if they are of any value it accrues to Radiator as well as to Product Development.

The judgment below is

Affirmed.