## Richmond

PATRICIA E. GASQUE, ET AL.

V.

MOOERS MOTOR CAR CO., INC. ET AL.

Record No. 811315.

March 9, 1984.

Present: All the Justices.

G. Rodney Sager (Monahan & Sager, on briefs), for appellants.
Richard W. Schaffer; Donald E. King (John A. Conrad; Sands, Anderson, Marks & Miller; McGuire, Woods & Battle, on briefs), for appellees.

RUSSELL, J., delivered the opinion of the Court.

This case requires consideration of the rights of a buyer of a defective automobile who seeks the remedy of revocation of acceptance against the seller and the manufacturer under the Uniform Commercial Code (Va. Code § 8.2-608).

On January 8, 1980, Patricia E. Gasque and Earl L. Gasque (buyers) filed a suit in equity against Mooers Motor Car Co., Inc. (Mooers) and Fiat Motors of North America, Inc. (Fiat). They alleged that they had purchased a new 1979 Fiat station wagon, manufactured by Fiat, from Mooers on February 21, 1979; that after delivery they discovered numerous defects in the car; that Mooers had made at least five attempts to correct the defects, without success; that on September 19, 1979, the buyers had demanded rescission of the sale and return of the purchase price or replacement of the car; and that the demand had been refused. The bill of complaint sought only cancellation of the sale and return of the purchase price or, alternatively, replacement of the car with a new one of similar model. There was no claim for compensatory damages, although there was a claim for punitive damages and "loan interest, legal interest, costs of this litigation, and an award of attorney's fees," as well as "other and further relief."

The court heard evidence *ore tenus* and, in a written opinion, held that the evidence did not show a substantial impairment of value of the car by reason of the defects and that the buyers had failed to revoke their acceptance within a reasonable time. At trial, the court sustained Fiat's motion to strike the evidence as to it, on the ground that the remedy of rescission, or revocation of acceptance, was not available against a party who had no contract with the buyer. A decree was entered in favor of both defendants, from which the buyers appeal. We agree with the trial court's rulings.

In accordance with established standards of appellate review, we must view the evidence in the light most favorable to the parties prevailing below. The buyers took delivery of a new Fiat from Mooers on February 21, 1979. At various subsequent times, they

reported to Mooers that they had experienced a water leak, a loose gearshift lever, difficulty shifting into second and third gear, heater malfunction, an inoperative clock and interior light, a loose wire under the dash, blown fuses, a piece missing from a front door, automatic choke problems, difficulty starting, fast idling, difficulty closing the rear door on the driver's side, difficulty opening the rear door on the passenger's side, excessive oil consumption, loud vibrations, and various other noises and rattles. In addition, they claimed that the reclining front seat broke, and that they experienced repeated difficulty with the foot-long plastic extension to the gearshift lever, which pulled loose.

The buyers returned the car to Mooers on March 13, March 23, an unspecified date in May, June 22, June 27, July 20, and August 6, 1979, for service. On each occasion, Mooers repaired the items complained of, without charge, although Mooers could find no evidence of some of the problems described by the buyers. Mooers conceded that the car experienced a recurring problem with the gearshift extension and testified that this defect affected three out of seventy cars of this model which it had recently sold. Mooers' service manager testified that the gearshift extension would come off only if used improperly by pulling it upward and that the car was still operable without the extension. The car was in fact driven for thousands of miles while subject to this defect. Although Mooers thought a permanent repair of this problem could be accomplished, the difficulty continued up to the time of trial.

The buyers consulted counsel, who, on September 19, 1979, wrote to Mooers and to Fiat demanding "a full refund including interests and expenses for the times that the vehicle was in the shop or, in the alternative, the replacement of said automobile."

The buyers continued to drive the Fiat, except when it was left with Mooers for service. When the car was last in Mooers' shop for repairs on August 6, it had 4,543 miles on the odometer. When buyers' counsel wrote to Mooers on September 19, he stated that the car had been driven 5,400 miles. At the time of the trial on May 21, 1980, the car had been driven over 8,000 miles. The buyers testified that they purchased a used Volkswagen in November 1979, and permanently parked the Fiat, which by then had been driven 8,000 miles, in their driveway.

Code § 8.2-608 provides:

**Revocation of acceptance in whole or in part.—**

(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it

(a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

(b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

Although the U.C.C. "Official Comment" appended to this section makes clear that the buyer is no longer required to elect between rescission and damages for breach, the buyers in this case did so by their pleading. The prayer of the bill is purely for a restoration of the parties to the *status quo ante*, including such incidental damages as would accomplish that purpose. The prayer for punitive damages is extraneous and ineffectual. The suit is, as it must be to accomplish its purpose, founded upon the contract between Mooers and the buyers. Punitive damages are unavailable in suits purely *ex contractu*, and can be awarded only where an independent, wilful tort is alleged and proved. *Kamlar Corp.* v. *Haley*, 224 Va. 699, 299 S.E.2d 514 (1983). Even if the buyers' bill alleged a tort, which it fails to do, an award of compensatory damages, which are not claimed here, is an indispensible predicate for an award of punitive damages, except in actions for libel and slander. *Newspaper Publishing Corp.* v. *Burke*, 216 Va. 800, 805, 224 S.E.2d 132, 136 (1976). Thus, the trial court properly confined its consideration to the question whether the evidence supported the prerequisites for revocation of acceptance under Code § 8.2-608: (1) substantial impairment of value to the buyer, and (2) action within a reasonable time and before any substantial change

in condition of the goods which is not caused by their own defects.*

A buyer's right to revoke acceptance does not arise from every breach of warranty, notwithstanding the availability of damages for the breach; it arises only where the value of the goods to the buyer is substantially impaired. *Tiger Motor Co.* v. *McMurtry*, 284 Ala. 283, 224 So.2d 638 (1969). The test of such impairment is not, however, a diminution in value of the goods on the open market, or to the average buyer, but rather a substantial impairment of value to the particular buyer involved. *See Champion Ford Sales, Inc.* v. *Levine*, 49 Md. App. 547, 433 A.2d 1218 (1981). Whether substantial impairment of value to the particular buyer exists is an issue to be determined by the trier of fact. *See Asciolla* v. *Manter Oldsmobile-Pontiac, Inc.*, 117 N.H. 85, 370 A.2d 270 (1977). The buyer must carry the burden of proof on this issue by a preponderance of the evidence.

The authorities disagree as to the standard of proof which should apply. The buyers urge us to adopt a subjective test, under which the buyers need only persuade the fact-finder that their "faith has been shaken" in the product. *See, e.g., Stamm* v. *Wilder Travel Trailers*, 44 Ill. App.3d 530, 358 N.E.2d 382 (1976), and *Zabriskie Chevrolet, Inc.* v. *Smith*, 99 N.J. Super. 441, 240 A.2d 195 (1968). We decline this invitation and hold that the buyer must offer objective evidence showing: (1) that the goods fail to conform to the terms of the contract of sale, and (2) that the nonconformity substantially impairs the value of the goods to the buyer. *See Asciolla* v. *Manter, supra*; *GNP Commodities, Inc.* v. *Walsh Heffernan Co.*, 95 Ill. App.3d 966, 420 N.E.2d 659 (1981).

How may this be shown? Undoubtedly, there may be a purchaser of an automobile who wants it for an unusual and special purpose, such as display in a collection of antique vehicles. But the burden would be on the buyer to show such a special need. In the absence of such a showing, the fact-finder is entitled to infer that the goods are needed by the buyer for their customary and ordinary purpose—simple transportation in the case of an automobile. In the instant case, there was persuasive evidence that

---

* Buyers contend that the condition of the car was in breach of implied warranties. Mooers contends that such warranties were expressly excluded by the language of the parties' contract. Because of the view we take of the case, it is unnecessary to decide this question, and we will assume, without deciding, that the warranties were effective.

the Fiat in question substantially fulfilled that purpose. It had been driven 5,400 miles by the time the buyers sought to revoke acceptance and an additional 2,600 miles thereafter. The trial court applied a standard of "driveability" as the test of whether the car's value to the buyers was substantially impaired. While such a standard would not be of universal application, we cannot say that it was erroneous where the buyers failed to prove any need for the car beyond ordinary transportation. Accordingly, the trial court's finding in this respect was supported by evidence and will not be disturbed on appeal.

In deciding whether the remedy of revocation of acceptance is applicable, the fact-finder must resolve additional issues: whether the buyer unreasonably delayed giving notice of revocation, whether the condition of the goods had substantially changed, and whether the buyer had made unjustified use of the goods after giving notice of revocation. As to all these issues, the buyer has the burden of proving by a preponderance of the evidence that his conduct was reasonable. The Uniform Commercial Code has substituted a standard of commercial reasonableness for the stricter standards which formerly prevailed, but the guiding principles are clear. Revocation of acceptance must be made promptly, or within a reasonable time after acceptance, and the buyer may not use the goods to a material degree and then attempt to revoke. *Reece* v. *Yeager Ford Sales, Inc.*, 155 W. Va. 453, 184 S.E.2d 722 (1971). What constitutes a reasonable time depends upon the facts and circumstances of each case. The time for revocation will ordinarily extend beyond the time for giving notice of breach. *Lanners* v. *Whitney*, 247 Or. 223, 428 P.2d 398 (1967); *Pedrini* v. *Mid-City Trailer Depot, Inc.*, 1 Wash. App. 56, 459 P.2d 76 (1969). Where the delay in notification of revocation is brought about because the buyer gave the seller repeated opportunities to correct the defects and the seller procrastinated in accomplishing repairs, the delay is not unreasonable. *Seekings* v. *Jimmy GMC of Tucson, Inc.*, 130 Ariz. 596, 638 P.2d 210 (1981). But after giving notice of revocation, the buyer holds the goods as bailee for the seller. The buyer cannot continue to use them as his own and still have the benefit of rescission; his continued use becomes wrongful against the seller, unless induced by the seller's instructions or promises. *Stephens Industries, Inc.* v. *American Express Co.*, 471 S.W.2d 501 (Mo. Ct. App. 1971);

*Sellman Auto, Inc.* v. *McCowan*, 89 Nev. 353, 513 P.2d 1228 (1973).

▮ Exceptions have been made to the rule in mobile home cases, where departure from the home before resolving the litigation would cause undue hardship to the buyer and where the buyer's continued occupancy might be the best means of safeguarding the property for a seller who refuses to take it back. *Minsel* v. *El Rancho Mobile Home Center, Inc.*, 32 Mich. App. 10, 188 N.W.2d 9 (1971). *Cf. Twin Lakes Mfg. Co.* v. *Coffey*, 222 Va. 467, 281 S.E.2d 864 (1981). But this reasoning has no application to the continuing use of an automobile, which ordinarily depreciates in value with every mile it is driven.

▮ Applying these principles to the case at bar, the buyers' delay, at least until after August 6, was reasonable in light of the seller's continuing efforts to effect repairs, which were only partially successful. But it is equally clear that the buyers' continued use of the car after giving notice of revocation of acceptance on September 19, during which time they drove it 2,600 miles, was entirely inconsistent with their position as a bailee, maintaining custody only to safeguard the car for the seller. Such personal use of what they contended to be the seller's property does not meet the standard of commercial reasonableness, and the trial court correctly so held.

▮ The trial court correctly struck the evidence against Fiat. The remedy of revocation of acceptance was the sole relief available to the buyers under their bill of complaint, as noted above. This remedy lies only against a seller of goods, not against a remote manufacturer. This is so because the remedy, where successful, cancels a contract of sale, restores both title to and possession of the goods to the seller, restores the purchase price to the buyer, and as fairly as possible, returns the contracting parties to the *status quo ante*. The remote manufacturer, having no part in the sale transaction, has no role to play in such a restoration of former positions. *Seekings* v. *Jimmy GMC of Tucson, Inc.*, *supra*, 130 Ariz. at 600, 638 P.2d at 214; *Reece* v. *Yeager Ford Sales, Inc.*, 155 W. Va. 461, 468, 184 S.E.2d 727, 731 (1971).

▮ The buyers argue that this limitation on revocation revivifies the "archaic doctrine of privity." We disagree. A remote manufacturer is liable to a buyer for damages arising from negligence or from breach of warranty, and the defense of lack of privity has been abolished as to such cases. Code § 8.2-318. But the

remedy of revocation of acceptance under Code § 8.2-608 is conceptually inapplicable to any persons other than the parties to the contract of sale sought to be rescinded.

For these reasons, the decree will be

*Affirmed.*