MICHAEL MORRISON AND WANDA JEAN MORRISON v. SEARS, ROEBUCK & COMPANY v. COLBY FOOTWEAR INC. AND COLBY MACHINE CORPORATION v. YORK HEEL OF MAINE, INC.

No. 267PA86

(Filed 7 April 1987)

**1. Sales § 6.1— defective shoe heels—summary judgment for seller improper**

Defendant Sears was not entitled to summary judgment on plaintiffs' claim for breach of the implied warranty of merchantability arising from the collapse of a shoe heel where plaintiffs presented the deposition testimony of a manufacturing consultant and former employee of the company which manufactured the heel that the heels of the shoes in question were made of a type of plastic known as urethane, and affidavits from an expert engineer that the left heel was more flexible than normal, did not meet American footwear industry practices for quality, lacked sufficient rigidity due to an improperly formulated plastic compound to adequately support a 125 to 135 pound woman under working and walking conditions in an office environment, and was therefore not suitable for the purpose for which it was designed. N.C.G.S. 25-2-314.

**2. Sales §§ 6.1, 22.1— defective shoe heels—breach of implied warranty of merchantability—products liability defense applicable**

In an action for breach of the implied warranty of merchantability brought by a purchaser of a pair of high heel shoes after one heel collapsed, defendant Sears was not entitled to summary judgment under N.C.G.S. § 99B-2 on the theory that it had no reasonable opportunity to inspect the shoes. The defenses of N.C.G.S. § 99B-2(a) to products liability actions apply to

such actions when brought on the theory of breach of implied warranty of merchantability under the Uniform Commercial Code; however, the facts controlling the applicability of the defenses are in dispute in this case.

Justice MEYER dissenting.

ON appeal of a decision of the Court of Appeals, 80 N.C. App. 224, 341 S.E. 2d 40 (1986) which affirmed a judgment entered by *Rousseau, J.,* on 21 November 1984 in Superior Court, WILKES County. Heard in the Supreme Court 10 February 1987.

*Franklin Smith for the plaintiff appellants.*

*Moore, Willardson & Lipscomb, by Larry S. Moore and William F. Lipscomb, for the defendant appellee Sears, Roebuck & Company.*

MITCHELL, Justice.

The sole issue before us is whether the Court of Appeals erred in affirming the trial court's entry of summary judgment for the defendant Sears, Roebuck and Company (hereinafter "Sears") on the plaintiffs' claims for a breach of an implied warranty of merchantability. We hold that the Court of Appeals erred in that regard.

The plaintiffs, Wanda Jean Morrison and her husband, Michael Morrison, brought suit against Sears alleging that Mrs. Morrison bought a pair of high-heeled shoes from a Sears store in the spring of 1981. They alleged that on 2 April 1981, the second time she wore the shoes, the left heel gave way and buckled under. This caused her to fall and sustain a serious back injury which required surgery to correct. Mrs. Morrison sought to recover for damages resulting from her injury, and Mr. Morrison sought damages for loss of consortium. They brought their claims on both the theory of breach of implied warranty of merchantability and the theory of negligence, alleging that Sears had failed to market a reasonably safe product fit for ordinary use and had failed to warn the plaintiffs of the defect.

Sears filed a third-party complaint against Colby Footwear, Inc., the manufacturer of the shoes, and Colby Machine Corporation. The plaintiffs were thereafter permitted to amend their complaint to add Colby Footwear, Inc. and Colby Machine Cor-

poration as original defendants. The plaintiffs were also permitted to file an amended complaint which added York Heel of Maine, Inc., the manufacturer of the heel, as an additional party defendant.

The trial court granted summary judgment in favor of the defendant Sears and allowed the motion to dismiss by York Heel of Maine, Inc. The trial court also granted summary judgment in favor of Colby Machine Corporation but not Colby Footwear, Inc. Sears took a voluntary dismissal of its claims against the third-party defendants, Colby Footwear, Inc. and Colby Machine Corporation.

The plaintiffs appealed to the Court of Appeals assigning as error only the trial court's entry of summary judgment in favor of Sears. The Court of Appeals affirmed that summary judgment. This Court allowed the plaintiffs' petition for discretionary review of the Court of Appeals' decision, limited to the question of whether the Court of Appeals erred in affirming the trial court's summary judgment for the defendant Sears with regard to the plaintiffs' claims based on the theory of breach of warranty of merchantability.

By making a motion for summary judgment, a defendant may force a plaintiff to produce a forecast of evidence demonstrating that the plaintiff will be able to make out at least a *prima facie* case at trial or be able to surmount an affirmative defense. *Dickens v. Puryear*, 302 N.C. 437, 453, 276 S.E. 2d 325, 335 (1981). "The party moving for summary judgment must establish the lack of any triable issue by showing that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." *Watts v. Cumberland County Hosp. System*, 317 N.C. 321, 322-23, 345 S.E. 2d 201, 202 (1986); *Caldwell v. Deese*, 288 N.C. 375, 218 S.E. 2d 379 (1975). "[A]ll inferences of fact from the proofs proffered at the hearing must be drawn against the movant and in favor of the party opposing the motion." *Dickens v. Puryear*, 302 N.C. at 453, 276 S.E. 2d at 335, quoting *Page v. Sloan*, 281 N.C. 697, 706, 190 S.E. 2d 189, 194 (1972). Upon a motion for summary judgment by a defendant, a plaintiff "need not present all the evidence available in his favor but only that necessary to rebut the defendant's showing that an essential element of his claim is non-existent or that he cannot surmount an

affirmative defense." *Dickens v. Puryear*, 302 N.C. at 453, 276 S.E. 2d at 335.

To prove a breach of implied warranty of merchantability under N.C.G.S. § 25-2-314,

> a plaintiff must prove, first that the goods bought and sold were subject to an implied warranty of merchantability; second, that the goods did not comply with the warranty in that the goods were defective at the time of sale; third, that his injury was due to the defective nature of the goods; and fourth, that damages were suffered as a result. *Tennessee-Carolina Transportation, Inc. v. Strick Corp.*, 286 N.C. 235, 210 S.E. 2d 181 (1974); *Burbage v. Atlantic Mobilehome Suppliers Corp.*, 21 N.C. App. 615, 205 S.E. 2d 622 (1974). The burden is upon the purchaser to establish a breach by the seller of the warranty of merchantability by showing that a defect existed at the time of the sale. *Rose v. Epley Motor Sales*, 288 N.C. 53, 215 S.E. 2d 573 (1975).

*Cockerham v. Ward*, 44 N.C. App. 615, 624-25, 262 S.E. 2d 651, 658, *disc. rev. denied*, 300 N.C. 195, 269 S.E. 2d 622 (1980).

The defendant Sears has argued before this Court that it was entitled to summary judgment as to the implied warranty of merchantability claims for two reasons. Sears contends that the plaintiffs did not meet their burden of proof because they came forward with no forecast of evidence that a defect existed in the shoe at the time of sale. Sears also contends that N.C.G.S. § 99B-2 provides it a defense in this case because Sears had no reasonable opportunity to inspect which, in the exercise of reasonable care, would have revealed the existence of the alleged defect.

[1] The plaintiffs alleged in their complaint that the shoes purchased "looked to be of excellent quality," but that the soles and heels are merely cast plastic without any type of metal support. As a result, when pressure is applied to the heels, they collapse easily. Therefore, the plaintiffs alleged that at the time of sale the shoes were not fit for the ordinary purpose for which they are used, due to defective design and construction.

The plaintiffs presented evidence through the deposition testimony of Marshall Brim, a manufacturing consultant and former employee of York Heel of Maine, Inc., that the heels of the

shoes in question are made of a type of plastic known as ure-thane. The plaintiffs also presented an affidavit and "supplemental affidavit" of B. Everett Gray, an engineer to be tendered as an expert, apparently in the field of footwear. The affidavit included a report prepared by Gray upon his examination of the shoes in question. The report indicated that Gray tested the shoes on 19 July 1984 to determine the amount of force required to deflect the heels, i.e., to move the heels of the shoes forward toward the toes. He determined that the right heel met the industry standard, but that the left heel was more flexible than normal. Therefore, it did not meet the American footwear industry practices for quality. Gray's "supplemental affidavit" contained his opinion that the heel of the left shoe sold to Mrs. Morrison lacked sufficient rigidity, due to an improperly formulated plastic compound, to adequately support a 125 to 135 pound woman under walking and working conditions in an office environment. He concluded, therefore, that the left shoe was "not suitable for the purpose for which [it] . . . was designed for use by a consumer."

In light of the principles applicable to motions for summary judgment and those applicable to claims for breach of implied warranty of merchantability under the Uniform Commercial Code, we conclude that such a forecast of evidence by the plaintiffs was sufficient to demonstrate that they will be able to make out at least a *prima facie* case that the shoe was defective at the time Sears sold it to Mrs. Morrison in 1981. Sears was not entitled to summary judgment in its favor on the ground that the plaintiffs had failed to make a sufficient forecast of evidence.

[2] We next turn to Sears' contention that N.C.G.S. § 99B-2(a) provides it with a defense in this case. That statute provides in pertinent part, that:

> No product liability action, except an action for breach of express warranty, shall be commenced or maintained against any seller when the product was acquired and sold by the seller in a sealed container or when the product was acquired and sold by the seller under circumstances in which the seller was afforded no reasonable opportunity to inspect the product in such a manner that would have or should have, in the exercise of reasonable care, revealed the existence of the condition complained of, unless the seller damaged or mishandled the product while in his possession . . . .

N.C.G.S. § 99B-2(a) (1985). Sears has argued before this Court that the legislature intended that N.C.G.S. § 99B-2(a), a part of the Products Liability Act, be available as a defense to actions for breach of an implied warranty of merchantability brought under the Uniform Commercial Code. We agree.

A basic rule of statutory construction is that the intent of the legislature controls. *Campbell v. Church*, 298 N.C. 476, 484, 259 S.E. 2d 558, 564 (1978). "The intent of the Legislature may be ascertained from the phraseology of the statute as well as the nature and purpose of the act and the consequences which would follow from a construction one way or another." *Id.*

The implied warranty of merchantability arises under the Uniform Commercial Code upon the *sale* of goods when, as alleged in the present case, the seller is a merchant with respect to goods of the kind sold. N.C.G.S. § 25-2-314(1) (1986) (emphasis added). The term "product liability action" as used in the Products Liability Act includes "any action brought for or on account of personal injury, death or property damage caused by or resulting from . . . the *selling* . . . of any product." N.C.G.S. § 99B-1(3) (1986) (emphasis added). Therefore, an action for breach of implied warranty of merchantability under the Uniform Commercial Code is a "product liability action" within the meaning of the Products Liability Act if, as here, the action is for injury to person or property resulting from a sale of a product.

Further, N.C.G.S. § 99B-2(a) specifically excepts actions for breach of *express* warranties from the defenses it provides in product liability actions. To aid in statutory construction, the doctrine of *expressio unius est exclusio alterius* provides that the mention of such specific exceptions implies the exclusion of others. *Campbell v. Church*, 298 N.C. 476, 482, 259 S.E. 2d 558, 563 (1979); *Walla Walla v. Walla Walla Water Co.*, 172 U.S. 1, 43 L.Ed. 341 (1898). Therefore, we conclude that in products liability actions arising from breaches of *implied* warranties, unlike those arising from breaches of *express* warranties, the defenses provided by N.C.G.S. § 99B-2(a) are available to defendants.

Additionally, we note that subsection (b) of N.C.G.S. § 99B-2 incorporates by reference the Uniform Commercial Code's definition of a "buyer" and provides an additional cause of action for breach of implied warranty in certain situations not expressly

covered by the Code. These facts strengthen our view that the General Assembly, when enacting the Products Liability Act after the Uniform Commercial Code had been adopted, did not intend that the two acts be mutually exclusive, but intended an harmonious integration of the two. We hold that the defenses of N.C.G.S. § 99B-2(a) to products liability actions apply to such actions when brought on the theory of breach of implied warranty of merchantability under the Uniform Commercial Code.

Although the defenses provided by N.C.G.S. § 99B-2(a) may be available to Sears in the present case, we do not address or decide their actual applicability. Nor do we decide at this point that the trial court will be required to submit any such defense for the jury's consideration at trial. We only conclude that summary judgment for Sears was improper.

The plaintiffs' forecast of evidence tends to show that the facts controlling the applicability of the defenses provided by the statute are in dispute in this case. Drawing all reasonable inferences in favor of the plaintiffs, we conclude that their forecast of evidence tended to show that Sears possessed testing equipment at the time it sold the shoes in question to Mrs. Morrison which could have detected the defect in the shoe that is alleged to have buckled and caused her to fall. For purposes of withstanding Sears' motion for summary judgment, such evidence was sufficient to demonstrate that the plaintiffs will be able at trial to surmount the affirmative defense available under the statute to a defendant who had no reasonable opportunity to inspect.

Accordingly, the opinion of the Court of Appeals affirming summary judgment for the defendant Sears is reversed. This case is remanded to that Court for further remand to the Superior Court, Wilkes County, for trial.

Reversed and remanded.

Justice MEYER dissenting.

A brief recitation of particular facts from the forecast of the evidence is necessary to an understanding of this dissenting opinion. Plaintiffs' Complaint alleges that Wanda Jean Morrison purchased a pair of high-heeled shoes from defendant Sears' store in Winston-Salem in the spring of 1981 and that while wearing these

shoes for the second time on April 2, 1981, the heel of the left shoe buckled causing plaintiff to fall and receive injuries. Plaintiffs allege that the left heel gave way because the material of which it was made was of inadequate strength and quality due to *defective design and construction.* Plaintiffs' asserted claims against Sears for breach of implied warranty are the only claims before us.

Through their pleadings and extensive discovery, the parties have established the following: Sears purchased the shoes in question from Colby Footwear, Inc. The heel in question, which plaintiffs contend "buckled under," and sole of the shoe was a separate unit which Colby purchased from York Heel of Maine, Inc. which manufactured the heel.

Colby Footwear, Inc. is in the business of manufacturing women's shoes. Colby requested York Heel to make this particular type of heel so Colby could use it in manufacturing shoes of the type in question. Colby provided York Heel with the design specifications and specified the materials it wanted the heels made of. York Heel then produced some models of the heels for Colby and Colby approved them. York Heel then made the molds for the heels which were paid for and owned by Colby. Colby controlled the manufacturing process in terms of the type of heel, the type of materials and the type of structure.

After the heel and sole unit was completed Colby attached the leather upper portion of the shoe to the heel and sole unit. During Colby's manufacturing process the shoes were inspected at various steps. The completed shoes were sent to Sears' warehouse in Garland, Texas.

All shoes offered for retail sale by Sears are delivered to Sears in individual boxes which are contained in shipping cases. After receipt of such cases, the individual boxes containing each pair of shoes are removed from the cases and placed in inventory where they remain until requested by and shown to a customer. If the customer does not buy the shoes they are returned to the individual boxes which are returned to inventory until requested by another customer. Shoes are handled carefully at all times before they are sold to a customer to prevent damage from occurring, and any shoes which appear to be damaged are removed from inventory and not sold. Sears does not remove shoes from

boxes to inspect them upon receipt from the manufacturer, and in its retail sales stores, are not equipped to conduct inspections of shoes other than inspections for damage which is readily observable by any person who may look at the shoes.

As stated in plaintiffs' Complaint, the shoes in question looked to be of excellent quality at the time of sale in 1981. Even three years later in 1984 there was no visible defect in the shoes in question. N.C.G.S. § 99B-2(a) provides in pertinent part:

> No product liability action, . . . shall be commenced . . . against any seller when the product was acquired and sold by the seller . . . under circumstances in which the seller was afforded no reasonable opportunity to inspect the product in such a manner that would have or should have, in the exercise of reasonable care, revealed the existence of the condition complained of, unless the seller damaged or mishandled the product while in his possession. . . .

(Other provisions of the statute apparently not pertinent here relate to the exclusion from the operation of the statute of actions for breach of express warranty, and to actions for breach of implied warranty against a seller only when the *manufacturer* is not subject to the jurisdiction of our state courts or is insolvent.) Otherwise stated, the statute clearly provides that actions based on the theory of *implied* warranty may not be brought against "any seller when the product was acquired and sold by the seller . . . under circumstances in which the seller was afforded no reasonable opportunity to inspect the product in a manner which would have . . . in the exercise of reasonable care revealed the existence of the condition complained of, unless the seller damaged . . . the product while in his possession."

The rule stated in this statute is essentially the common law rule applicable to *negligence claims* that a retailer has no duty to test or inspect a product *for latent conditions or defects*.

> (A) retailer who purchases from a reputable manufacturer and sells the product under circumstances where he is a mere conduit of the product is under no affirmative duty to inspect or test for *a latent defect*, and, therefore, liability cannot be based on a failure to inspect or test in order to discover such defect and warn against it.

(Emphasis added.) 2 Frumer and Friendman, Products Liability Sec. 18.08(1)(a) (1979). In cases like this one where the retail seller does not manufacture the product, he may assume that the manufacturer has done his duty in properly constructing the article and in not placing upon the market a commodity which is defective and likely to inflict injury. *See Cockerham v. Ward*, 44 N.C. App. 615, 262 S.E. 2d 651, *disc. rev. denied*, 300 N.C. 195, 269 S.E. 2d 622 (1980) (quoting *General Motors Corp. v. Davis*, 141 Ga. App. 495, 223 S.E. 2d 825 (1977)). The law does not require a retailer to send shoes it acquires for sale to the public to a testing laboratory to be tested for latent defects. It is clear from the forecast of the evidence in this case that no inspection short of one by an expert with sophisticated scientific equipment would have disclosed the alleged latent defect in the design, composition and construction of the shoe heel in question.

The uncontradicted evidence in this case shows that Sears is not equipped to conduct this type of inspection in its retail stores. Plaintiffs obtained an affidavit from B. Everett Gray of St. Louis, Missouri which states he has personal knowledge that Sears has testing laboratories which are suitable for the testing of footwear. Apparently the majority believes that because Sears allegedly has such testing laboratories, presumably somewhere in the United States, it had a "reasonable opportunity to inspect" the shoes in a manner that would have, or should have, revealed the alleged defect. I do not subscribe to any such belief.

Even if I agreed that Sears had a duty to inspect for latent defects, and I most assuredly do not, I find it beyond the pall of reason to hold that, because Sears had laboratories at some undisclosed location capable of testing footwear, a jury question is presented as to Sears' "reasonable opportunity to inspect" pursuant to our statute.

The trial court properly granted Sears' motion for summary judgment. I vote to affirm the decision of the Court of Appeals.