CALEY EUGENE ALBERTI AND LINDA HAGGINS ALBERTI v. MANUFAC-
TURED HOMES, INC., D/B/A AAA MOBILE HOMES AND BRIGADIER
HOMES, INC.

No. 371PA89

(Filed 5 September 1991)

1. Uniform Commercial Code § 23 (NCI3d)— mobile home—
revocation of acceptance against manufacturer—no contractual
relationship

Plaintiffs were not entitled to revoke acceptance of a mobile
home against the manufacturer where there was no direct
contractual relationship between the parties. Except in the
case of self-propelled vehicles for which the statute expressly
provides otherwise, the existence of a direct contractual rela-
tionship between buyer and seller is generally a prerequisite
to the right of a buyer to revoke acceptance against the seller.
N.C.G.S. § 25-2-608.

Am Jur 2d, Sales § 1195.

2. Sales § 8 (NCI3d)— mobile home sale—breach of warranty—
action against manufacturer

Plaintiffs could pursue a breach of warranty claim against
a manufacturer where the manufacturer made representations
concerning the flooring in its homes to the seller in a con-
ference held for the purpose of highlighting the attributes
of its products and enabling the seller to pass the information
along to consumers to induce purchases of the homes. Further-
more, the breach of warranty issue was sufficiently presented
to the jury. N.C.G.S. § 25-2-313.

Am Jur 2d, Sales §§ 724, 733.

3. Uniform Commercial Code § 26 (NCI3d)— mobile home—breach
of warranty—damages—difference in value

The trial court erred in an action for breach of warranty
arising from the sale of a mobile home by awarding damages
which amounted to an estimate of the cost of repairs, rather
than the difference between the value of the mobile home
as warranted and its value as accepted. The facts tending
to show liability were not so entwined with those tending

ALBERTI v. MANUFACTURED HOMES, INC.

[329 N.C. 727 (1991)]

to show damages that defendant would be prejudiced by having the damages issue tried alone.

**Am Jur 2d, Sales §§ 1299, 1303.**

4. **Appeal and Error § 422 (NCI4th) — notice of appeal — affirmative relief sought — no appellant's brief — questions not preserved**

Plaintiffs did not preserve for appellate review issues regarding attorney fees, treble damages, and the award of interest where they gave a proper notice of appeal, did not file an appellant's brief within the time allowed, and attempted to argue the issues in their appellee's brief. Plaintiffs were not entitled to cross-assign error in their appellee's brief on these issues because they were seeking affirmative relief in the appellate division rather than arguing an alternative basis in law for supporting the judgment. N.C. Rules of App. P. 10(d).

**Am Jur 2d, Appeal and Error §§ 650, 665, 698.**

Justice MEYER concurring in part and dissenting in part.

Justice MITCHELL joins in the concurring and dissenting opinion.

ON discretionary review of a unanimous decision by the Court of Appeals, 94 N.C. App. 754, 381 S.E.2d 478 (1989), reversing in part and affirming in part judgment entered on 3 March 1988, and vacating an amendment to the judgment entered on 9 June 1988, by *Barefoot, J.*, in Superior Court, NEW HANOVER County. Heard in the Supreme Court 11 April 1990.

*Poisson, Barnhill & Britt, by James R. Sugg, Jr., for plaintiff-appellants.*

*Murchison, Taylor, Kendrick, Gibson & Davenport, by Vaiden P. Kendrick and John L. Coble, for defendant-appellee Brigadier Homes, Inc.*

EXUM, Chief Justice.

Plaintiffs, who are consumers, purchased from defendant retailer a mobile home produced by defendant manufacturer. The floor of the home did not conform to certain representations made about it. We must consider what remedies, if any, are available to plain-

tiffs under the Uniform Commercial Code against defendant manufacturer, with whom plaintiffs had no direct dealings. We conclude plaintiffs have a remedy for breach of warranty made by the manufacturer, but the remedy of revocation of acceptance against the manufacturer is unavailable.

## I.

Evidence at trial tends to show the following:

Plaintiffs were interested in purchasing a mobile home from defendant AAA Mobile Homes, a retailer ("AAA" or "the retailer"). They emphasized to AAA's branch manager Lowell Bockert that they desired plywood flooring because they had previously had trouble with particle board flooring. Bockert assured them that the double wide Caprice model manufactured by defendant Brigadier ("Brigadier" or "the manufacturer") had flooring made of a new material called "Novadeck" which was a waterproof, tongue-and-grooved plywood thicker and stronger than particle board. While Bockert was showing Mr. Alberti the Caprice home, they tried to examine the flooring to ascertain its type but could not get the carpet up without damaging it. Rather than calling in a serviceman to check the floor, plaintiffs trusted Bockert's representations about it. In August 1984, they purchased the Brigadier Caprice home from AAA for $32,600, making a $10,000 down payment and financing the balance of the purchase price through CIT Financial Services. Plaintiffs received a one-year manufacturer's limited warranty covering defects in material and workmanship.

At trial, Bockert claimed to base his representations about the unit's flooring on information given him some time earlier by Brigadier's sales representative Donald Phillips. Phillips allegedly described the Novadeck flooring system during a conference, when he highlighted the attributes of Brigadier merchandise so that AAA could pass along this information to customers and thereby facilitate sales of Brigadier products. Several witnesses corroborated Bockert's testimony that Phillips made these representations to him.

At trial, Phillips admitted having met with Bockert, but denied representing to him that the Caprice's floor was made of Novadeck; that it was stronger or thicker than particle board; or that it was waterproof.

Shortly after occupying their new Brigadier Caprice home in 1984, plaintiffs discovered their hot water heater was leaking. A

ALBERTI v. MANUFACTURED HOMES, INC.

[329 N.C. 727 (1991)]

service representative from Brigadier examined the area and told plaintiffs that the flooring was made out of particle board. Because of water damage to the utility room floor, a washing machine leg fell through. Plaintiffs also claimed to discover over thirty other defects.

After discussing problems about their home several times with agents of the retailer AAA and the manufacturer Brigadier, plaintiffs on 25 April 1985 gave both AAA and Brigadier notice that they were revoking acceptance of the mobile home. They subsequently filed suit, seeking to enforce this revocation and to recover damages for breach of warranty. Plaintiffs later amended their complaint, seeking treble damages for unfair and deceptive acts or practices in or affecting commerce under Chapter 75 of the North Carolina General Statutes.

During trial plaintiffs negotiated a settlement with the retailer AAA and dismissed it from the case. The trial court submitted two issues about Brigadier's liability to the jury:

1. Did the defendant, Brigadier Homes, Inc., represent that the mobile home contained Nova Deck flooring?

ANSWER: Yes

2. Did the plaintiffs give proper notice of revocation of acceptance of the mobile home to the defendant, Brigadier Homes, Inc.?

ANSWER: Yes

The trial court then entered judgment on the verdict. The judgment recited:

Pursuant to the jury verdict set forth above and the stipulations entered into between the parties and the instructions of the judge presiding with regard to the meaning of the two factual issues submitted to the jury:

It is hereby ADJUDGED, ORDERED and DECREED that the plaintiff have and recover of the defendant, Brigadier Homes, Inc., the sum of $12,184.00 (Twelve Thousand One Hundred Eighty-Four Dollars and No/100) as restitution and that the plaintiff's [sic] were entitled to revoke and did revoke the mobile home purchase contract.

It is further ADJUDGED, ORDERED and DECREED that the plaintiff have and recover of the defendant, Brigadier Homes,

ALBERTI v. MANUFACTURED HOMES, INC.

[329 N.C. 727 (1991)]

Inc., the sum of $1,500.00 (One Thousand Five Hundred Dollars and No/100) as an award of treble damages for a violation by the defendant, Brigadier Homes, Inc., of N.C.G.S. 75-1.1, in that the defendant falsely represented the flooring in the mobile home sold to the plaintiffs which misrepresentation resulted in damages to plaintiffs in the amount of $500.00 (Five Hundred Dollars and No/100).

It is further ADJUDGED, ORDERED and DECREED that the plaintiffs have and recover of the defendant, Brigadier Homes, Inc., interest at the rate of 8% (eight percent) from September 1, 1984, the date Plaintiff's [sic] first learned of the breach, until the judgment herein provided is paid.

The amount of damages to be awarded was not submitted to the jury but was determined pursuant to certain stipulations by the parties. The revocation of acceptance award—$12,148.00 "as restitution"—appears to have been computed by the trial court as a return of plaintiffs' payments, offsetting depreciation and fair rental expenses. Regarding the $1500 treble damages award for Brigadier's false representation, the $500 base amount appears to rely at least in part on the estimated cost of repairing the hole in the floor.

On 9 June 1988, the trial court granted in part defendant's motion to amend the judgment by awarding interest only from the date of judgment. It also ordered that plaintiffs return the home to Brigadier on receipt of the payment "in restitution."

Brigadier appealed to the Court of Appeals, which reversed in part, affirmed in part, and vacated the amendment to the judgment. It held that plaintiffs were not entitled to revoke acceptance against Brigadier because the two parties were not in a contractual relationship. The Court of Appeals also concluded there was no breach of warranty issue presented at trial and that plaintiff could not rely on this theory to uphold the entire judgment. The Court of Appeals treated Brigadier's false representations about the nature of the floor as being only a violation of N.C.G.S. § 75-1.1. It affirmed the judgment's award of treble damages for that violation. We granted plaintiffs' petition for discretionary review to consider whether they are entitled to revoke acceptance against defendant manufacturer and whether they are entitled to relief grounded on a breach of warranty by the manufacturer.

ALBERTI v. MANUFACTURED HOMES, INC.

[329 N.C. 727 (1991)]

## II.

[1]   Plaintiffs first argue that the Court of Appeals erred in holding they were not entitled to revoke acceptance against defendant Brigadier. Brigadier contends that because it never entered into a contractual relationship with plaintiffs, revocation of acceptance is not an available remedy against it. We agree with Brigadier and affirm the Court of Appeals decision on this issue.

Because the sale of a mobile home is a "transaction in goods," it is subject to Article 2 of North Carolina's version of the Uniform Commercial Code (hereinafter "UCC"). N.C.G.S. § 25-2-102 (1986). We must construe the UCC to determine the rights of the parties.

The primary goal of statutory construction is to arrive at legislative intent. *Electric Supply Co. v. Swain Electric ,Co.*, 328 N.C. 651, 403 S.E.2d 291 (1991); *Hunt v. Reinsurance Facility*, 302 N.C. 274, 275 S.E.2d 399 (1981). Legislative intent may be inferred from the nature and purpose of the statute and the consequences which would follow, respectively, from various constructions. *In re Kirkman*, 302 N.C. 164, 273 S.E.2d 712 (1981); *Campbell v. Church*, 298 N.C. 476, 259 S.E.2d 558 (1979). Under the doctrine of *expressio unius est exclusio alterius*, a statute's expression of specific exceptions implies the exclusion of other exceptions. *Morrison v. Sears, Roebuck*, 319 N.C. 298, 354 S.E.2d 495 (1987).

Bearing in mind these canons of statutory construction, we now turn to Article 2 to determine whether the legislature intended that ultimate consumers be able to revoke their acceptance of goods against remote manufacturers with whom they have no contractual relationship. Article 2 defines acceptance of goods:

(1) Acceptance of goods occurs when the *buyer*

(a) after a reasonable opportunity to inspect the goods signifies to the *seller* that the goods are conforming or that he will take or retain them in spite of their non-conformity; or

(b) fails to make an effective rejection . . . but such acceptance does not occur until the *buyer* has had a reasonable opportunity to inspect them; or

(c) does any act inconsistent with the *seller's* ownership; but if such act is wrongful as against the *seller* it is an acceptance only if ratified by him.

## ALBERTI v. MANUFACTURED HOMES, INC.

[329 N.C. 727 (1991)]

N.C.G.S. § 25-2-606 (1986) (citations omitted) (emphasis added). Article 2 also governs the circumstances in which a purchaser who has accepted goods may revoke that acceptance:

(1) The *buyer* may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it

(a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

(b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the *seller's* assurances.

(2) Revocation of acceptance must occur within a reasonable time after the *buyer* discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the *buyer* notifies the *seller* of it.

N.C.G.S. § 25-2-608 (1986) (emphasis added). If the buyer properly exercises the right to revoke acceptance, he is entitled to recover so much of the purchase price as has been paid, as well as to other relief provided by statute. N.C.G.S. § 25-2-711 (1986).

The manner in which the statutes governing acceptance and revocation of acceptance use the terms "buyer" and "seller" indicates that the existence of a buyer-seller relationship is a prerequisite to the buyer's ability to revoke acceptance. We must determine whether the legislature intended to include within the term "seller" a manufacturer of goods who has not dealt directly with a buyer that seeks to revoke acceptance, but whose product was sold to the buyer by an intermediate retailer.

We rely on the definitions the UCC provides. A "buyer" is "a person[1] who buys or contracts to buy goods." N.C.G.S. § 25-2-103(1)(a) (1986). A "seller" is:

*a person who sells* or contracts to sell *goods. Any manufacturer of self-propelled motor vehicles*, as defined in [N.C.G.S.

---

1. The statutory definition of "person" applies, of course, to business entities. N.C.G.S. § 25-1-201(30) (1986).

ALBERTI v. MANUFACTURED HOMES, INC.

[329 N.C. 727 (1991)]

§ 20-4.01,[2]] *is also a "seller"* with respect to buyers of its product to whom it makes an express warranty, *notwithstanding any lack of privity* between them, for purposes of *all rights and remedies* available to buyers under this Article.

N.C.G.S. § 25-2-103(1)(d) (1986) (emphasis added).

In determining whether remote manufacturers are generally "sellers" against whom a consumer may revoke acceptance, the legislature's inclusions and omissions in its definition of "seller" are instructive as to its intent. Under N.C.G.S. § 25-2-103(1)(d), an automobile manufacturer who issues an express warranty to buyers of its product is a "seller" under Article 2 for *all* rights and remedies available to buyers, including revocation of acceptance, whether or not it is in a direct contractual relationship with the ultimate purchaser of its vehicle. This appears to be an exception to the general statutory rule regarding who is a seller and who is a buyer. Under the doctrine of *expressio unius est exclusio alterius*, the mention of such a specific exception to the statutory rule implies that the legislature intended to exclude other exceptions. *Morrison v. Sears, Roebuck*, 319 N.C. 298, 354 S.E.2d 495. Thus, manufacturers of products other than self-propelled motor vehicles who are not in a direct contractual relationship with ultimate purchasers are, by implication, not "sellers" against whom purchasers may revoke acceptance.

Moreover, an examination of the consequences resulting from revocation of acceptance leads us to believe the legislature did not intend the remedy to be available against a remote manufacturer. Return of the purchase price to the buyer and, as is often the case, return of the goods to the seller is a type of exchange uniquely suited to situations involving parties in direct contractual relationships and is intended to effectuate restoration of the *status quo ante* to these parties.[3] *See, e.g., Gasque v. Mooers Motor Car*

---

2. N.C.G.S. § 20-4.01 provides definitions for terms used in Chapter 20 of the North Carolina General Statutes, governing motor vehicles.

3. Tender of the goods back to the seller is not required in order for revocation of acceptance to be effective because notice is sufficient. *Roy Burt Enterprises v. Marsh*, 328 N.C. 262, 400 S.E.2d 425 (1991); *Motors, Inc. v. Allen*, 280 N.C. 385, 186 S.E.2d 161 (1972); 4 Anderson on the Uniform Commercial Code § 2-608:32 (3d ed. 1983) ("Anderson"). However, ultimately returning the goods is appropriate in many situations and restores the parties to their pre-contract positions, consistent with the goals of revocation of acceptance. *See Gasque v. Mooers Motor Car Com-*

**ALBERTI v. MANUFACTURED HOMES, INC.**

[329 N.C. 727 (1991)]

*Company*, 227 Va. 154, 313 S.E.2d 384 (1984); *Seeking v. Jimmy GMC of Tucson, Inc.*, 130 Ariz. 596, 638 P.2d 210 (1981). These remedial procedures are not well suited to situations where the parties do not deal directly with each other. Where there is no direct dealing between the parties, revocation of acceptance would not restore the *status quo ante*; it would, instead, require a manufacturer to refund a purchase price it had not received in exchange for a product it did not sell to the revoking party.

Limiting revocation of acceptance to parties who deal directly with each other is consistent with the approach taken by most other courts that have considered the question. *See, e.g., Andover Air Limited Partnership v. Piper Aircraft Corp. v. Kladstrup*, 7 U.C.C. Rep. Serv. 2d 1494 (D. Mass. 1989), and cases cited therein; *Gasque*, 227 Va. 154, 313 S.E.2d 384; *Seeking*, 130 Ariz. 596, 638 P.2d 210. *But see Durfee v. Rod Baxter Imports, Inc.*, 262 N.W.2d 349 (1977) (holding that liberal administration of code remedies allows automobile buyers to revoke acceptance against manufacturers).

For the foregoing reasons, we hold that, except in the case of self-propelled vehicles for which the statute expressly provides otherwise, the existence of a direct contractual relationship between buyer and seller is generally a prerequisite to the right of a buyer to revoke acceptance against the seller.[4] Under this rule, plaintiffs are not entitled to revoke acceptance against defendant Brigadier. The double wide home is not a self-propelled motor vehicle. Brigadier did not sell it to plaintiffs. Plaintiffs did not compensate Brigadier for it. There were no negotiations and there was no direct contractual relationship between these parties. We affirm the decision of the Court of Appeals on this issue.

III.

[2]   We now consider whether plaintiffs are entitled to damages from Brigadier for breach of warranty. We conclude that they are.

---

*pany*, 227 Va. 154, 313 S.E.2d 384 (1984); *Seeking v. Jimmy GMC of Tucson, Inc.*, 130 Ariz. 596, 638 P.2d 210 (1981). Other courses of action may be appropriate in some circumstances. *See* N.C.G.S. §§ 25-2-608(3), -603 to -604, -706, -711.

4. This may sometimes include the manufacturer, such as where the buyer has some direct dealings with the manufacturer, bypassing the seller from whom he ultimately purchases. In this or similar situations, the ultimate purchaser may be able to revoke acceptance against the manufacturer. Anderson, § 2-608:10.

N.C.G.S. § 25-2-313 (1986) provides:

> (1) Express warranties by the seller are created as follows:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

Though at first blush use of the terms "buyer" and "seller" in N.C.G.S. § 25-2-313 seems to restrict the warranty remedy to parties who are in a direct contractual relationship, as in the case of revocation of acceptance, the official commentary to this particular statute indicates otherwise. Comment 2 states:

> Although this section is limited in its scope and direct purpose to warranties made by the seller to the buyer as part of a contract for sale, the warranty sections of this Article are not designed in any way to disturb those lines of case law growth which have recognized that warranties need not be confined either to sales contracts or to the direct parties to such a contract. They may arise in other appropriate circumstances. . . . The provisions of Section 2-318 on third party beneficiaries expressly recognize this case law development within one particular area. Beyond that, the matter is left to the case law with the intention that the policies of this Act may offer useful guidance in dealing with further cases as they arise.

N.C.G.S. § 25-2-313, comment 2. Thus, the words "buyer" and "seller" as used in N.C.G.S. § 25-2-313 are not intended to be restrictive; they are shorthand descriptions of the most common situation which give rise to warranties and "offer useful guidance in dealing with further cases as they arise." *Id.*

Consistent with comment 2, our case law has recognized that a direct contractual relationship in the sale of the product itself is not a prerequisite to recovery for breach of express warranty against the manufacturer. *Kinlaw v. Long Manufacturing*, 298 N.C. 494, 259 S.E.2d 552 (1979). In *Kinlaw*, we concluded that the buyer of goods from a retailer could recover against the manufacturer

for breach of a written manufacturer's warranty directed to the ultimate consumer. We now conclude that the same result should follow where a manufacturer's oral representations made directly to a retailer are intended to be communicated to remote buyers to induce them to buy a product.

Here, plaintiffs' evidence tended to show Brigadier made oral representations that the mobile home's flooring was made of Novadeck, a waterproof, tongue-and-grooved plywood stronger than particle board. The jury found accordingly. Brigadier made these representations to AAA in a conference held for the purpose of highlighting the attributes of its products and enabling AAA to pass this information along to consumers to induce purchases of Brigadier homes. Because Brigadier intended its express oral representations to its retailer to be passed on to and induce ultimate consumers to buy Brigadier's product, plaintiffs, as ultimate consumers induced by the representations to buy the product, can, under the principles laid down in *Kinlaw*, pursue against Brigadier a breach of warranty claim grounded on the representations.

The Court of Appeals concluded the breach of warranty issue was neither presented to the jury nor properly preserved for appeal. We are satisfied the record reveals otherwise. A breach of warranty issue was submitted to the jury, which answered it affirmatively in favor of plaintiffs. The trial court charged the jury as follows:

The first issue is, *"Did the defendant, Brigadier Homes, Inc., represent that the mobile home contained Nova deck flooring?"* Now, the burden on this issue, members of the jury, is on the plaintiff to satisfy you by the greater weight of the evidence that the defendant expressly warranted that the flooring was Nova decking. A contract for the pre-sale of goods may include a representation that the goods possessed certain characteristics. Such a representation is called a "warranty." Warranties may be created by the express words used by the parties to the sale and such warranties are called "express warranties." A breach occurs when the goods fail in any respect to conform to the express warranty given to the seller [sic]. That is, the goods do not conform to the affirmation of fact or promise made by the seller to the buyer which relate to the goods and becomes part of the basis of the bargain between them. Finally, as to this issue on which the plaintiff has the

ALBERTI v. MANUFACTURED HOMES, INC.

[329 N.C. 727 (1991)]

burden of proof, if you find by the greater weight of the evidence that the warranty was breached, then you will answer the issue "yes." On the other hand, if you fail to so find, then you would answer the issue "no."

(Emphasis added; capitals in the original changed to lower case.)

The highlighted issue identified at the beginning of the charge and placed on the verdict sheet was sufficient, when taken in the context of the instruction, to constitute a breach of warranty issue.

### IV.

[3]  We now turn to the question of damages. In warranty actions, the measure of damages is generally the difference between the value of the goods as accepted and the value as warranted. N.C.G.S. § 25-2-714. The UCC allows courts to utilize other measures for damages if justified by the circumstances, *id.*, and recovery of special damages is appropriate if it is within the contemplation of the parties. *Id.; see also* N.C.G.S. § 25-2-714, official comment and North Carolina comment. If there is error in determining damages, a new trial may be awarded on that issue alone, provided the question of liability is not so entwined with that of damages as to render unfair a trial limited solely to damages. *Housing, Inc. v. Weaver*, 305 N.C. 428, 290 S.E.2d 642 (1982); *Weyerhaeuser Co. v. Supply Co.*, 292 N.C. 557, 234 S.E.2d 605 (1977).

The statutory measure of damages was not followed here. Rather than being based on the difference between the value of the mobile home as warranted, *i.e.* with the Novadeck flooring, and its value as accepted, *i.e.* with the particle board flooring, the $500 award amounted to an estimate of the cost of repairing a hole in the floor.

Consequently, we vacate the $500 award entered by the trial court for breach of warranty and trebled under Chapter 75 and remand for a new trial only on the question of damages. The facts tending to show liability were not so entwined with those tending to show damages that defendant would be prejudiced by having the damages issue tried alone. The issue of Brigadier's representations and the circumstances under which they were made was fully and fairly litigated. It need not be relitigated in order to determine the appropriate measure of breach of warranty damages — the difference in value between the goods as accepted and as warranted.

ALBERTI v. MANUFACTURED HOMES, INC.

[329 N.C. 727 (1991)]

There has been no appeal from the trial court's decision that Brigadier's misrepresentations amounted to a violation of Chapter 75 and that damages awarded for the misrepresentations should be trebled as provided by this chapter. This decision, therefore, becomes the law of the case and will govern at the retrial.

V.

[4] Plaintiffs next ask us to address other issues regarding attorneys' fees, treble damages, and the award of interest. We decline to do so.

Plaintiffs gave proper notice of appeal on these issues but did not file an appellant's brief within the time allowed under Rule 13 of the North Carolina Rules of Appellate Procedure. Rather, they attempted to argue the issues in their appellee's brief. The Court of Appeals, therefore, correctly held that plaintiffs had failed to preserve any of these questions for its review, and we affirm this decision.

Because on these issues plaintiffs are seeking affirmative relief in the appellate division rather than simply arguing an alternative basis in law for supporting the judgment, they are not entitled to cross-assign error in their appellee's brief. N.C. R. App. P. 10(d). To have properly raised these issues plaintiffs should have filed, but did not file, an appellant's brief.

VI. SUMMARY

In conclusion, we affirm the decision of the Court of Appeals as to the revocation of acceptance claim and reverse it as to the breach of warranty claim. We vacate the award of damages. We remand to the Court of Appeals for further remand to Superior Court, New Hanover County, for a new trial limited solely to the question of plaintiffs' damages for breach of warranty. The amount of that award is to be trebled under Chapter 75.

Affirmed in part; reversed in part; vacated in part; and remanded.

Justice MEYER concurring in part and dissenting in part.

I agree with the majority's conclusion that, under the peculiar facts of this case, sufficient privity exists to extend warranty liability to the defendant manufacturer, Brigadier Homes, Inc. However,

ALBERTI v. MANUFACTURED HOMES, INC.

[329 N.C. 727 (1991)]

while I concur in the result, I write separately to distance myself from what I consider to be the majority's excessively broad construction of the law in the area of manufacturer liability for verbal express warranties passed on to remote purchasers.

Only recently has this State deviated from the historic strict adherence to the privity requirement.[1] In *Kinlaw v. Long Manufacturing*, 298 N.C. 494, 259 S.E.2d 552 (1979), this Court saw fit to dilute the privity requirement in written express warranty cases wherein the manufacturer is sued by a remote purchaser. *Kinlaw* was an action by the purchaser of a farm tractor against the manufacturer to recover for breach of a written express warranty contained in the owner's manual. The Court held that the existence of the written warranty, intended to reach the ultimate purchaser, sufficed to allow the purchaser to sue the manufacturer, despite the lack of an actual direct contractual relationship.

In deciding to extend liability to the manufacturer, the *Kinlaw* majority acknowledged that North Carolina's allegiance to the principle of privity has, "at best, wavered." *Id.* at 497, 259 S.E.2d at 555. Indeed, prior to *Kinlaw*, privity was required in all warranty instances with the exception of those written warranties addressed to the ultimate consumer pertaining to "sales of goods, intended for human consumption, in sealed packages prepared by the manufacturer and having labels with representations to consumers inscribed thereon." *Service Co. v. Sales Co.*, 261 N.C. 660, 668, 136 S.E.2d 56, 62-63 (1964). Somewhat later, the exception to the privity requirement was extended to include insecticides contained in sealed containers with warnings on the label that reached the ultimate consumer. *See Byrd v. Rubber Co.*, 11 N.C. App. 297, 300, 181 S.E.2d 227, 228 (1971). As it concerned a tractor (as opposed to goods in sealed packages), *Kinlaw* itself extended the "assault on the citadel" of privity beyond the above circumscribed categories in which there was a strong public interest in ensuring manufacturer accountability for defective goods.[2]

---

1. This deviation is not without precedent. *See Terry v. Bottling Co.*, 263 N.C. 1, 3, 138 S.E.2d 753, 754 (1964) (Sharp, J., later C.J., concurring); Marc A. Franklin, *When Worlds Collide: Liability Theories and Disclaimers in Defective-Product Cases*, 18 Stan. L. Rev. 974 (1966); William L. Prosser, *The Fall of the Citadel (Strict Liability to the Consumer)*, 50 Minn. L. Rev. 791 (1966).

2. Citing *Simpson v. Oil Co.*, 217 N.C. 542, 8 S.E.2d 813 (1940), a case involving a manufacturer's express warranty on the label of a spray insecticide that the product was nonpoisonous to humans, the *Kinlaw* majority offhandedly observed

ALBERTI v. MANUFACTURED HOMES, INC.

[329 N.C. 727 (1991)]

My purpose here is not to quarrel with the outcome of *Kinlaw*; indeed, in a mass consumer market, consumers should. be able to rely on written representations by remote manufacturers addressed to ultimate consumers that provide a basis for the ultimate bargain. *See Kinlaw*, 298 N.C. at 501, 259 S.E.2d at 557 (quoting with approval *Rogers v. Toni Home Permanent Co.*, 147 N.E.2d 612, 615-16 (Ohio 1958) (" 'Surely under modern merchandising practices the manufacturer owes a very real obligation toward those who consume or use his products. The warranties made by the manufacturer in his advertisements and by the labels on his products are inducements to the ultimate consumers . . . .' " ) ). To this end, manufacturers should not be able to hide behind the privity requirement when they launch defective goods into the marketplace and consumers rely on express representations of quality made by the manufacturer to induce sales.

My concern is that today the majority once again makes an abrupt, *sub silentio* alteration in the evolving common law in this area. To date, all instances in which the privity requirement has been abrogated have involved *written* express warranties addressed to ultimate consumers. *See, e.g., Kinlaw*, 298 N.C. 494, 259 S.E.2d 552; *Corprew v. Chemical Corp.*, 271 N.C. 485, 157 S.E.2d 98 (1967); *Service Co. v. Sales Co.*, 261 N.C. 660, 136 S.E.2d 56; *Simpson v. Oil Co.*, 217 N.C. 542, 8 S.E.2d 813 (1940). Today, as in *Kinlaw*, the Court, without elaboration, extends the lines of assault against the citadel of privity. Henceforth, privity will not be necessary when *oral* representations are made by a manufacturer directly to a retailer intended to be communicated to remote buyers to induce them to buy a product. In a sense, the existence of a written warranty mitigates the attenuation of the relationship between remote buyers and manufacturers. My concern is that the justified and well-known premise of vertical privity, namely, to ensure that a valid, ascertainable relationship exists between commercial litigants prior to imposing liability, is being unduly vitiated.

---

that the *Kinlaw* decision "simply reaffirm[ed] the vitality" of the Court's prior case law regarding privity. *Kinlaw*, 298 N.C. at 500, 259 S.E.2d at 557. In retrospect, however, it is apparent that the decision amounted to something more than a reaffirmation; *Kinlaw extended* the privity exception to allow recovery against manufacturers for breach of written warranties pertaining to all sorts of goods directed to the ultimate consumer. *See* Beth H. Daniel, Note, *Products Liability: No Privity Requirement If Express Warranty Addressed to the Ultimate Consumer*, 16 Wake Forest L. Rev. 857, 868-70 (1980).

ALBERTI v. MANUFACTURED HOMES, INC.

[329 N.C. 727 (1991)]

Under the peculiar facts of this case, however, this extension arguably is justified. Brigadier Homes knowingly made an explicit warranty to its retailer, specifically so that the retailer would pass it on to the ultimate purchaser to serve as a sales inducement. It would be inequitable to allow Brigadier Homes to avoid liability under such circumstances. The privity requirement between remote buyers and manufacturers based on oral representations given by manufacturers should be abrogated only when such representations are explicit and are clearly intended to be passed on to prospective purchasers to induce the ultimate sale.

Finally, I dissent from that portion of the decision that remands this case for a new trial only on the question of damages, with instructions that whatever amount the jury returns be automatically trebled. The question of liability, in my view, is here inextricably intertwined with the question of damages, causing prejudice to defendant if only the damages issue is to be relitigated. *Housing, Inc. v. Weaver*, 305 N.C. 428, 290 S.E.2d 642 (1982). The issues presented to the jury at trial, and indeed defendant's entire litigation strategy, were the result of intensive negotiations occurring at the precharge conference. As the majority has noted, the correct statutory measure of damages was not followed by the trial court. It is obvious, however, from the record before this Court that the parties and the trial judge agreed, with regard to the breach of warranty issue, that the amount of the damages would be the cost of the repairs (generously rounded from $358.00 to $500.00), trebled. That explains why only one issue, that is, whether the misrepresentation was made by the manufacturer, was submitted to the jury. The majority's remand for reconsideration of the damages issue alone, with instructions that the amount returned by the jury be trebled, is inequitable under the peculiar facts of this case.

The case should be remanded to be retried upon the issues customarily submitted in chapter 75 actions of this type as well as the damages issue. I vote to remand for a new trial on all issues.

Justice MITCHELL joins in this concurring and dissenting opinion.